INTERNATIONAL PAPER COMPANY, PLAINTIFF v. JAMES W. HUFHAM, SR. AND WIFE, PATRICIA C. HUFHAM AND JAMES W. HUFHAM, JR., DEFEND-ANTS AND THIRD PARTY PLAINTIFFS v. SEABOARD SYSTEMS RAILROAD, THIRD PARTY DEFENDANT

No. 8513SC630

(Filed 1 July 1986)

1. **Quieting Title § 2— standing—possibility of cloud on title**

Plaintiff had standing to challenge defendants' claim of ownership of former railroad property where defendants' answer admitted some possibility that a portion of the disputed land might lie within the boundaries of plaintiff's deed.

2. **Quieting Title § 2.2— former railroad bed—1849 deed—easement rather than fee simple—summary judgment for plaintiff proper**

The trial court properly granted summary judgment for plaintiff in an action to quiet title to a tract of land which was formerly a portion of the Seaboard Coastline Railroad where plaintiff's predecessors in title included a landowner who conveyed the "right and privilege" to build a railroad over the land in 1849; defendants had acquired a quitclaim deed from Seaboard, a successor to the 1849 railroad, after Seaboard pulled up its tracks; the controlling issue was whether the 1849 deed conveyed fee simple title or an easement which Seaboard had abandoned; the granting clause conveyed only the right and privilege to enter the land and build a railroad; there were no covenants of seizin and warranty; and the deed predated N.C.G.S. § 39-1, which contains a presumption that a conveyance is in fee.

APPEAL by defendants from *Clark, Judge.* Judgment entered 10 January 1985 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 21 November 1985.

*Michael W. Willis for defendant appellants.*

*Prevatte, Prevatte & Peterson by James R. Prevatte, Jr., and Kenneth R. Campbell for plaintiff appellee.*

COZORT, Judge.

On 27 June 1983 plaintiff International Paper Company filed this action to quiet title to a tract of land located in Brunswick and Columbus Counties, North Carolina. The trial court granted summary judgment for plaintiff ordering that the cloud of defendants' adverse claim be removed from plaintiff's title. We affirm.

On 12 June 1981, defendants acquired from Seaboard Coast Line Rail Road Company (formerly Wilmington and Manchester Rail Road) (hereinafter "Seaboard") by quitclaim deed a strip of land 130 feet wide by 6,606 feet long lying in Brunswick County, between Lake Waccamaw and Wilmington. This land was a portion of the Seaboard line which ran between Whiteville and Wilmington, North Carolina. Seaboard removed its tracks from this land when service on the line was discontinued in 1977.

On 27 June 1983 plaintiff filed this action alleging that it was fee simple owner of a certain tract of land which it acquired from Acme Fertilizer Company on 26 June 1967, and that defendants claim an estate or interest in part of this land based upon the quitclaim deed defendants had acquired from Seaboard on 12 June 1981, which is recorded in the Brunswick County Registry in Deed Book 480 at page 151. Plaintiff further alleged that Seaboard had held only an easement in said land which had been granted to it by plaintiff's predecessors in title during the 1840s. Plaintiff alleged that Seaboard had abandoned its easement and that the lands have reverted to the original owners and their successors in interest, from which plaintiffs claim their title.

Defendants answered, and while asserting they are the fee simple owners of the land described in Deed Book 480 at Page 151 of the Brunswick County Registry, they admitted that "there is some possibility that a portion of those lands described in Deed Book 480 at Page 151 of the Brunswick County Registry may lie within the boundaries of those lands [plaintiff acquired from Acme Fertilizer Company on 26 June 1967]."

Defendants filed a third-party complaint against Seaboard, alleging fraud in the conveyance of the 130-foot wide, 6,606-foot long tract of land; defendants subsequently voluntarily dismissed that complaint.

Thereafter, plaintiff moved for summary judgment and on 10 January 1985 the trial court granted plaintiff's motion for summary judgment ordering "that the cloud of the adverse claim of the defendants be and is hereby removed from the title to the [plaintiff's] property described in the complaint . . . ." Defendants appeal.

[1]  First, we address whether we must consider defendants' contention on appeal that the calls in plaintiff's deed do not encompass any of the railroad property acquired by defendants in their 12 June 1981 quitclaim deed from Seaboard. The transcript of the summary judgment hearing in this case shows that part of the controversy at the hearing centered on whether a call in plaintiff's deed was to the center of the railroad line or only to the edge of the railroad "right-of-way." Defendants urge this Court to hold that the call in plaintiff's deed is only to the southern edge of the railroad right-of-way, which would mean that plaintiff's land would not encompass any of the land in which defendants claim an interest. Thus, according to defendants, plaintiff would have no standing to bring this action.

While the determination of what the boundary lines are is a question of law for the court, *Carson v. Reid*, 76 N.C. App. 321, 332 S.E. 2d 497 (1985), *affirmed*, 316 N.C. 189, 340 S.E. 2d 109 (1986), we need not judicially determine what the boundary lines are in plaintiff's deed. As noted earlier, in their answer, "Defendants admit that there is some possibility that a portion of those lands described in Deed Book 480 at Page 151 of the Brunswick County Registry may lie within the boundaries of those lands described in [plaintiff's deed]." This admission gave plaintiff standing in court to challenge the defendants' claim as a cloud upon its title. *Resort Development Co., Inc. v. Phillips*, 278 N.C. 69, 76, 178 S.E. 2d 813, 818 (1971). As our Supreme Court stated in *Resort Development Co., Inc.*:

> "In order to remove a cloud from a title, it is not necessary to allege and prove that . . . the plaintiff . . . had an estate in or title to the lands in controversy. It is only required . . . that the plaintiff or plaintiffs have such an interest in the lands as to make the claim of the . . . defendants adverse to him or them." *Etheridge v. Wescott*, 244 N.C. 637, 94 S.E. 2d 846; *Williams v. Board of Education*, 266 N.C. 761, 147 S.E. 2d

381. "An action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim." *Plotkin v. Bank*, 188 N.C. 711, 125 S.E. 541. By suit to remove a cloud from title, a plaintiff does not necessarily put his title in issue. "He is not demanding possession of land nor are his rights put in issue. He demands judgment that the defendant has no right, title or interest . . . adverse . . . to him." *Plotkin v. Bank, supra.*

*Id.* at 76-77, 178 S.E. 2d at 818. Thus, we need not consider defendants' contention concerning the boundary lines described in plaintiff's deed.

[2]   The controlling issue is whether a deed made by William Brinkley to the Wilmington and Manchester Rail Road Company in 1849 conveyed fee simple title or only an easement in the strip of land in controversy. It is this land which Seaboard conveyed by quitclaim deed to defendants. It is undisputed that Seaboard ceased rail traffic on the line in question on 28 February 1977, and removed its rails from the property in question in the summer of 1977. If the deed conveyed only an easement, the estate of the railroad company ceased and terminated when its tracks were removed and the railroad was abandoned; the defendants took nothing by the quitclaim deed; and plaintiff would be entitled to summary judgment. *McCotter v. Barnes*, 247 N.C. 480, 484, 101 S.E. 2d 330, 333 (1958).

The construction of a deed is a question of law for the court. *Brown v. Hodges*, 232 N.C. 537, 61 S.E. 2d 603 (1950). Upon reviewing the deed, we hold that the deed conveyed only an easement for railroad purposes and not a fee simple title. The deed, in pertinent part, reads as follows:

Whereas it is contemplated to construct a Rail Road from the Town of Wilmington in the State of North Carolina or from some point near that place, to the village of Manchester in the State of South Carolina or to some point near said last mentioned place; and it being supposed that said Rail Road will pass through the Counties of Brunswick and Columbus in the State of North Carolina and through the Districts of Horry, Marion, Darlington and Sumter in the State of South Carolina; and whereas the benefits and advan-

tages of the establishment of said Rail Road to the several and respective owners and proprietors of the lands through which the same will pass will greatly exceed the loss and damages which will be severally sustained by them by the construction of said Rail Road through their respective lands; and being desirous to promote the building and establishment of said Road: Now, therefore, know all men by these presents that I, Wm. Brinkley of the County of Brunswick in the State of North Carolina for and in consideration of the premises and in further consideration of the sum of having the Depot on my land near the dwelling in hand paid by the Wilmington and Manchester Rail Road Company at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, have given, granted and surrendered and by these presents do give, grant and surrender to the said Wilmington and Manchester Rail Road Company *the right and privilege by their agents and servants to enter upon each and every tract or parcel of land belonging to or held by me,* wheresoever the same may be situate through which they may desire to construct their Rail Road; to lay out and construct their said Road on such lands according to their pleasure; and to lay out, use, occupy and possess such portions of said lands contiguous to said Rail Road as they may desire as sites for Depots, Toll Houses, Warehouses, Water Stations, Engine Sheds, Wood Sheds, Work Shops or other buildings for the necessary accommodation of said company, or for the protection of their property or the property of others entrusted to their care; Provided, However, the said company shall not enter upon any portion of said lands which may be occupied by any Dwelling House, Yard, Garden or Grave Yard; and that the land laid out on the line of said Rail Road shall not exceed, except at the deep cuts and fillings, one hundred thirty feet in width, and at such deep cuts and fillings shall not exceed a width sufficient for the construction of the enbankments and deposits of waste earth; and that land contiguous to said Rail Road which may be used for the sites of buildings shall not exceed a sufficiency for the purposes of the Road. To have and to hold the before granted lands with the rights and privileges aforesaid unto the said Wilmington and Manchester Rail Road Company and their as-

signs for the uses and purposes aforesaid forever. [Emphasis
added.]

No land is conveyed by this language, only the "right and
privilege" to the railroad company to enter upon the lands of Mr.
Brinkley and lay out its railroad line, not to exceed 130 feet in
width, and "to lay out, use, occupy and possess such portions of
said lands contiguous to said Rail Road" for the construction of
buildings necessary for the accommodation of the railroad com-
pany. Title to the land, subject to such right-of-way or easement,
remained in Mr. Brinkley. *See Beasley v. Aberdeen and Rockfish
Railroad Co.*, 145 N.C. 272, 59 S.E. 60 (1907); *Railroad v. Olive*, 142
N.C. 257, 55 S.E. 263 (1906); Annot. 6 A.L.R. 3d 973 (1966).

*McCotter v. Barnes, supra*, relied upon by the defendants, is
distinguishable from the case at bar. In that case the deed in
question was held to have conveyed to the railroad the land in fee
simple. The granting clause of the deed in the *McCotter* case
recited that " 'said parties of the first part . . . have given,
granted, bargained and sold and by these presents do hereby
give, grant, bargain and sell unto the party of the second part, its
successors and assigns, a tract or parcel of land 100 feet in width
. . . .' " *Id.* at 482, 101 S.E. 2d at 332. Here the granting clause
conveyed only the right and privilege to enter upon the lands and
construct a railroad. The deed in *McCotter* contained covenants of
seizin and warranty reciting that the grantors were seized of the
property conveyed in fee and would defend such title. Here there
are no covenants of seizin and warranty. Finally, the court in *Mc-
Cotter* applied to the *Barnes* deed the presumption contained in
G.S. 39-1, that a conveyance shall be construed to be a conveyance
in fee unless "such conveyance in plain and express words shows,
or it is plainly intended by the conveyance or some part thereof,
that the grantor meant to convey an estate of less dignity." The
deed in question predates the enactment of G.S. 39-1.

In sum, we hold that the Brinkley deed conveyed only an
easement and the estate of Seaboard ceased and terminated when
it ceased rail traffic and removed its tracks. As such, defendants
acquired nothing through their quitclaim deed, and the trial court
properly granted summary judgment for the plaintiff.

Affirmed.

Judges WEBB and BECTON concur.