JESSE C. FISHER, JR. AND WIFE, GAYE S. FISHER, PLAINTIFFS v. CAROLINA SOUTHERN RAILROAD AND DAVID G. BUNN AND WIFE, DULCIE GARRELL BUNN, DEFENDANTS

No. COA99-1579

(Filed 19 December 2000)

**1. Easements— railroad—no evidence easement extinguished**

An 1847 deed granted to the Railroad an easement rather than a fee simple title in the property described therein, and the trial court properly concluded as a matter of law that the Railroad continues to own the easement granted pursuant to the deed because the record does not contain any evidence that the easement has been extinguished.

**2. Deeds— railroad—failure to show property located outside easement owned by another**

In an action where plaintiffs sought to establish that they are the successors in interest of the property where the Whiteville depot is located based on allegations that the Railroad had ceased to use the property in the manner described in an 1882 deed, the trial court property granted summary judgment for defendants based on plaintiffs' failure to meet their burden of showing a genuine issue of material fact exists as to whether the Whiteville depot is located outside the boundaries of the easement owned by the Railroad and created by an 1847 deed, because: (1) Exhibit #3 itself does not depict the location of the Whiteville depot in relation to the 1847 easement since it is not a plat, but instead a document that is a personal sketch drawn for the purpose of depicting the relationship between two tracts of property; (2) plaintiffs' argument is based on an assumption that the easement granted pursuant to the 1847 deed consists solely of a one hundred thirty foot right of way, when the 1847 deed in fact grants the Railroad an easement consisting of land contiguous to said Railroad not to exceed five acres in any one parcel as well as the one hundred thirty foot right of way; and (3) plaintiffs have not presented any evidence and do not argue in their brief that the Whiteville depot is located outside the boundaries of the total area of property described in the 1847 deed.

FISHER v. CAROLINA S. R.R.

[141 N.C. App. 73 (2000)]

Appeal by plaintiffs from order filed 29 July 1999 by Judge William C. Gore, Jr. in Columbus County Superior Court. Heard in the Court of Appeals 7 November 2000.

*McGougan, Wright, Worley, Harper & Bullard, L.L.P., by Dennis T. Worley and Paul J. Ekster, for plaintiff-appellants.*

*Rice & MacDonald, P.A., by Bret H. Davis, for defendant-appellees.*

GREENE, Judge.

Jesse C. Fisher, Jr. (Fisher) and Gaye S. Fisher (collectively, Plaintiffs) appeal an order filed 29 July 1999, granting summary judgment in favor of Carolina Southern Railroad, David G. Bunn, and Dulcie Garrell Bunn (collectively, Defendants).

The record shows that Plaintiffs' claim relates to two deeds describing property situated in Whiteville, North Carolina. In the first deed, executed in 1847 (the 1847 deed), a group of grantors, including Josiah Maultsby (Maultsby) and James Powell (Powell), granted an interest to Carolina Southern Railroad's predecessor in interest, the Wilmington and Manchester Railroad Company (collectively, the Railroad). The 1847 deed provided:

> Whereas it is contemplated to construct a Railroad from the Town of Wilmington in the State of North Carolina or from some point near that place to the village of Manchester in the state of South Carolina or to some point near said last mentioned place and it being supposed that said Railroad will pass through the counties of Brunswick and Columbus in the state of North Carolina and through the Districts of Horry, Marion, Darlington, and Sumter in the state of South Carolina. And whereas the benefits and advantages of the establishment of said Railroad, to the several and respective owners and proprietors of the lands through which the same will pass will greatly exceed . . . damages which will be severally sustained by them by the construction of said Railroad through their respective lands and being desirous to promote the building and establishment of said Road.
>
> Now therefore, know all men by these present[] that we the undersigned of the County of Columbus in the state of North Carolina for and in consideration of the premises and in further consideration of the sum of one dollar to us in hand paid by the [Railroad] at and before the sealing and delivering of

these present[], the receipt of which is hereby acknowledged, have given, granted and surrendered and by these present[] do give, grant and surrender to the said [Railroad], the Right and privilege by their agents and servants to enter upon each and every tract or parcel of land belonging to or held by us wheresoever the same may be situated through which they may desire to construct their railroad to lay out and construct their said Railroad on such lands, according to their pleasure. And to lay out, use, occupy and possess such portions of said lands, contiguous to said Railroad as they may desire for sites, for depots, toll houses, warehouses, water stations, engine sheds, wood sheds, work shops, or other buildings for the necessary accommodation of[] said Company or for the protection of their property or the property of others entrusted to their care.

Provided however, the said Company shall not enter upon any portion of said Land which may be occupied by any dwelling house, yard, garden, or graveyard, and that the lands laid out, on the line of said Railroad shall not exceed, except at the deep cuts and fillings, one hundred and thirty feet in width and at such deep cuts and fillings shall not exceed a width sufficient for the construction of the embankments and deposits of waste earth and that the land contiguous to said Railroad which may be used for the sites of buildings, shall not exceed five acres in any one parcel.

To have and to hold the before granted lands with the rights and privileges aforesaid unto the said [Railroad] and their assigns for the uses and purposes aforesaid forever.

Subsequent to the execution of the 1847 deed, the Railroad constructed railroad tracks on property described in the 1847 deed. The Railroad also constructed a structure (the Whiteville depot[1]) on property adjacent to the railroad tracks.

In 1882, several grantors, including Powell, executed a second deed (the 1882 deed), which named the Railroad as the grantee. The 1882 deed provided the Railroad would be permitted to construct "a new warehouse at Whiteville [d]epot," and contained the following language:

---

1. In their pleadings and affidavits, Plaintiffs refer interchangeably to the property that is subject to their lawsuit as the "railroad depot," "railroad station," "warehouse," and "Whiteville depot." We refer to this property as the "Whiteville depot."

FISHER v. CAROLINA S. R.R.

[141 N.C. App. 73 (2000)]

Witnesseth that for and in consideration of the sum of one dollar to them in hand paid the parties of the first part do give, grant, bargain, sell, convey[,] and confirm unto the [Railroad] the use, right, title[,] and privilege to build and construct a new warehouse at Whiteville [d]epot on said rail road in said county on a plot of land located 153 [feet] from the east end of the bridge of the county road where it crosses the rail road east of the old warehouse at Whiteville [d]epot. Said new warehouse to begin at the end of the said 153 feet and stand along side rail road not to exceed 136 feet in length and to be of a width not exceeding 70 feet and we further covenant and agree with said rail road that the said rail road shall have[,] hold[,] use[,] occupy[,] and enjoy the use of 100 feet of land open[,] free[,] and unobstructed in any direction from said ware house and we further covenant and agree with said rail road that we will not ourselves convey, or assign to any one else the right to build[,] put up[,] or construct any buildings[,] obstructions[,] or combustible material within 100 feet of said new warehouse and that we will at all times keep so far as our title extends the said lands open[,] free[,] and clear within 100 feet of said warehouse. And this deed is upon the express condition that when ever the said rail road shall cease to use the said ground for rail road warehouse privileges and to keep said warehouse in order and use for said rail road then all the rights, titles, uses[,] and privileges conveyed by this deed shall revert to the grantors, the parties of the first part[,] their heirs and assigns. To have and to hold to the said rail road and its successors under the privileges of its corporate powers according to law and their assigns forever subject to the conditions above expressed and the said parties of the first part do covenant and agree with said rail road that they will warrant and defend the title[,] uses[,] and privileges herein conveyed free and clear from any and all claims or persons claiming under[,] by[,] or through them. . . .

In a complaint filed 18 February 1997, Plaintiffs alleged they are "the successor[s] in interest of . . . Powell[,] who owned the property wherein the [Whiteville] depot was located." Plaintiffs alleged the Railroad had ceased to use the property described in the 1882 deed "for railroad warehouse privileges in that there has been no storage and/or use of said privileges for a substantial period of time and the facility has not been utilized for the purposes intended by the original parties to [the 1882] deed for a substantial period of time." Plaintiffs also alleged the Railroad "has neglected to maintain the property in a

reasonable state of repair and the same has become unsightly and is in need of renovation and repair." Plaintiffs, therefore, requested pursuant to the terms of the 1882 deed that the Railroad "be ordered to adhere to the requirements of said Deed regarding maintaining the same in a reasonable state of repair and use for the [R]ailroad." In the alternative, Plaintiffs requested "Plaintiff[s] be declared the owner of said property."

On 26 September 1997, the Railroad filed a motion for summary judgment on the ground "there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law." In support of its motion, the Railroad filed affidavits from three of its employees, who stated the Railroad continued to use the Whiteville depot in the operation of its business. In response to the Railroad's motion for summary judgment, Plaintiffs filed an affidavit stating, in pertinent part, that the Whiteville depot was not used by the Railroad for "railroad purposes" and the Railroad has "failed to keep [the Whiteville depot] in order and use." Additionally, Plaintiffs moved for summary judgment against Defendant on 20 January 1999. In an order filed 7 April 1999, the trial court denied the motions for summary judgment made by Plaintiffs and the Railroad.

On 6 July 1999, the Railroad deposed Robert D. Inman (Inman), a land surveyor employed by Plaintiffs to research the ownership of the Whiteville depot. Inman testified the 1847 deed was a "blanket easement" that "allowed the [R]ailroad additional areas to construct buildings [and] warehouses." He stated the easement granted in the 1847 deed included the property where the Whiteville depot is located. Inman stated the grantor of "this particular spot [where the Whiteville depot is located]" was Maultsby. In Inman's opinion, Maultsby "would've owned the fee" after he granted the easement in the property described in the 1847 deed. Maultsby, however, subsequently gave up his fee interest by "sell[ing] lots on either side of th[e] [easement]." The owners of the fee interest and any reversionary interest were therefore "the current owners" of the property previously owned by Maultsby. During Inman's deposition, defense counsel asked Inman to identify a document marked for identification as "Defendants' Exhibit #3." Inman identified the exhibit as a "personal sketch" that he drew for the purpose of depicting the relationship between two tracts of property: a tract granted from "David Gore to A.E. and J.L. Powell, . . . dated 1 November 1879," and a tract granted "from H.C. Rockwell, Mortgagee to A.E. and J.L. Powell[,] . . . dated 1 July 1880." Inman did not indicate on exhibit #3 the location of the

Whiteville depot or the boundaries of the 1847 easement. Plaintiffs also filed an affidavit by Inman.

In response to Inman's affidavit, the Railroad filed an affidavit of Staurt Gooden (Gooden), a licensed professional land surveyor. Gooden stated that pursuant to the 1847 deed, "the Railroad already had an interest in the property where the Whiteville [d]epot structure is located." Additionally, Gooden stated the property interest created by the 1847 deed "includes the land where the Whiteville [d]epot is situated."

On 9 July 1999, Defendants filed a motion to dismiss Plaintiffs' claim. On 13 July 1999, the trial court held a hearing on Defendants' motion. In an order filed 29 July 1999, the trial court made the following pertinent findings of fact and conclusions of law:

> After careful review of [the 1847 deed and the 1882 deed] it appears to the Court as a <u>matter of law</u> that the grantors in the 1882 [deed] granted, and the [Railroad] was granted, an easement for right-of-way to hold, use, occupy, and enjoy the use of one-hundred feet of land in any direction of the Whiteville [d]epot structure.

> The clear language of [the 1882 deed] . . . indicates that <u>prior to its execution the [R]ailroad . . . already had an interest in the property where the Whiteville [d]epot structure is located.</u> It further appears to the Court that based upon the language of the easement granted by [the 1847 deed] . . . that . . . [Defendants'] predecessor in interest had, and <u>[D]efendant[s] still do[] have</u>, a right-of-way one hundred thirty feet in width running through the area where the Whiteville [d]epot is located. <u>Such right-of-way includes the land where the Whiteville [d]epot is situated</u>.

> . . . .

> It follows therefore, that since none of the grantors in the [1882 deed] had any interest in the property where the Whiteville [d]epot is situated, inasmuch as their interest had already been conveyed to the [R]ailroad, that none of them could have conveyed any interest in such property at that time[.] . . . Therefore, the Court, Ex mero motu, and pursuant to Rule 56 of the <u>North Carolina Rules of Civil Procedure</u>, finds that . . . [Plaintiffs'] . . . forecast of evidence as set forth in [their] affidavits, and other discovery materials, including the depositions which have been

FISHER v. CAROLINA S. R.R.

[141 N.C. App. 73 (2000)]

provided to the Court, finds that there has been no forecast of evidence upon which . . . [P]laintiff[s] could prevail on [their] claim to have the property whereupon [the Whiteville depot] is now situated revert, and the Court <u>orders</u> that Summary Judgment be granted in favor of [Defendants].

The issues are whether: (I) the interest granted to the Railroad in the 1847 deed was an easement and, if so, whether the easement has been extinguished; and (II) the evidence in the record raises a genuine issue of material fact regarding whether the Whiteville depot is located on the property described in and subject to the grant contained in the 1847 deed.

I

[1] Plaintiffs argue the 1847 deed granted the Railroad an easement rather than fee simple title in the property described therein. We agree.

"An easement is a right to make some use of land owned by another without taking a part thereof." *Builders Supplies Co. v. Gainey,* 282 N.C. 261, 266, 192 S.E.2d 449, 453 (1972). "An easement may be created by an express grant." 1 Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 15-9, at 696 (5th ed. 1999) [hereinafter *Real Estate Law*]; *International Paper Co. v. Hufham,* 81 N.C. App. 606, 609, 345 S.E.2d 231, 233, *disc. review denied,* 318 N.C. 506, 349 S.E.2d 860 (1986). Whether a deed conveys an easement or fee simple title is a question of law. *International,* 81 N.C. App. at 609, 345 S.E.2d at 233.

In this case, the 1847 deed used language mirroring language previously construed by this Court in *International. See id.* at 609-11, 345 S.E.2d at 233-34. The court in *International* held the language granted an easement rather than fee simple title. *Id.* at 609, 345 S.E.2d at 233. Accordingly, the 1847 deed granted the Railroad an easement in the property described in the deed. Further, because the record does not contain any evidence that the easement granted by the 1847 deed has been extinguished,[2] the trial court properly concluded as a

---

2. Plaintiffs argue in their brief to this Court that the Railroad abandoned its interest in the easement granted by the 1847 deed and, therefore, this easement has been extinguished. Although an easement "may be extinguished through its abandonment by its owner," *Real Estate Law* § 15-30, at 744, Plaintiffs did not raise the issue of abandonment before the trial court. Accordingly, this issue is not properly before this Court. *See* N.C.R. App. P. 10(b)(1).

matter of law that the Railroad continues to own the easement granted pursuant to the 1847 deed.[3]

## II

**[2]** Plaintiffs argue, assuming the easement created by the 1847 deed has not been extinguished, the trial court improperly found that this easement "include[d] the land where the Whiteville [d]epot is situated." We disagree.

A party moving for summary judgment has the burden of showing no genuine issue of material fact exists, and this burden may be met by showing the nonmovant cannot produce essential evidence to support an element of his claim. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 29, 209 S.E.2d 795, 798 (1974). Once a movant meets this burden, the burden shifts to the nonmovant to set forth specific facts showing a genuine issue of material fact does exist. *Id.*; N.C.G.S. § 1A-1, Rule 56(e) (1999).

In this case, the Railroad filed an affidavit by Gooden, a licensed professional land surveyor. Gooden stated that pursuant to the 1847 deed, "the Railroad already had an interest in the property where the Whiteville [d]epot structure is located." Additionally, Gooden stated the property interest created by the 1847 deed "includes the land where the Whiteville [d]epot is situated." Plaintiffs did not present any evidence to contradict the Railroad's showing that the Whiteville depot is located within the boundaries of the 1847 easement. Rather, Plaintiffs' own expert testified in his deposition that the "blanket easement" granted in the 1847 deed included the property where the Whiteville depot is located.

Plaintiffs state in their brief to this Court that Defendants' exhibit #3, "Inman's plat," shows the Whiteville depot is located outside the boundaries of the "one hundred thirty-foot right of way" described in the 1847 deed. Inman testified, however, that the document labeled "exhibit #3" is not a plat; rather, the document is a "personal sketch" he drew for the purpose of depicting the relationship between two tracts of property. Exhibit #3 itself does not depict the location of the

---

3. Plaintiffs state in their brief to this Court, and we agree, that the trial court's 29 July 1999 order does not clearly state whether the 1847 deed granted the Railroad an easement or fee simple title. Nevertheless, because the interpretation of a deed is a question of law that this Court reviews *de novo*, *see International*, 81 N.C. App. at 609, 345 S.E.2d at 233, Plaintiffs are not prejudiced by the lack of clarity in the trial court's 29 July 1999 order.

Whiteville depot in relation to the 1847 easement; therefore, exhibit #3 does not raise a genuine issue of material fact regarding the location of the Whiteville depot. Moreover, Plaintiffs' argument is based on an assumption that the easement granted pursuant to the 1847 deed consists solely of a "one hundred thirty-foot right of way." The 1847 deed, however, grants the Railroad an easement consisting of "land contiguous to said Railroad which may be used for the sites of buildings . . . not [to] exceed five acres in any one parcel," as well as the "one hundred thirty-foot right of way." Plaintiffs have not presented any evidence and do not argue in their brief to this Court that the Whiteville depot is located outside the boundaries of the total area of property described in the 1847 deed. Plaintiffs, therefore, have not meet their burden of showing a genuine issue of material fact exists as to whether the Whiteville depot is located outside the boundaries of the easement created by the 1847 deed. Accordingly, the trial court properly granted summary judgment for Defendants.[4]

Affirmed.

Judges WYNN and FULLER concur.

---

4. Plaintiffs argue in their brief to this Court that there is a genuine issue of material fact regarding whether they have "a reversionary interest in the land where the [Whiteville depot] sits based upon the 1882 [deed]." Because the trial court properly concluded the Railroad owns an easement in the property upon which the Whiteville depot is located pursuant to the 1847 deed, the 1882 deed is a nullity and we need not address its construction.

We note, however, that Plaintiffs do not argue in their brief to this Court that the 1847 deed was in some way modified by the 1882 deed; rather, Plaintiffs state that if the Whiteville depot is found to be within the boundaries of the 1847 easement, then "the easement from 1847 still exists." We, therefore, do not address the issue of whether, under some circumstances, an easement may be implicitly modified by the terms of a subsequent easement involving the same property and the same grantor/grantee or their successors in interest.