KING ASSOCIATES, LLP, CHARLIE B. SEACRIEST, J. GARY THOMPSON, JAMES BOYCE, CECIL REID, FRED MILLER, RICHARD BRIDGES, WILLIAM P. GOFORTH d/b/a THERMAL INSULATORS, a Partnership, MICHAEL DEAN MONTIETH, and LANNY D. WALKER, Plaintiffs v. BECHTLER DEVELOPMENT CORPORATION, Defendant

No. COA05-1155

(Filed 1 August 2006)

**1. Railroads— charter—reference in deed—property rights conveyed**

Sections of a railroad charter which were referred to and incorporated into an 1856 deed to the railroad were properly considered by the trial court as evidence of what property rights the grantor intended to convey to the railroad.

**2. Deeds— railroad right-of-way—fee simple**

An 1856 deed that granted a railroad a "right of way" in, over and upon land granted a fee simple rather than an easement where the deed also stated that "the part and parcels of said land herein granted, with the right of way thereon," would be ascertained by the engineer of the railroad in compliance with its charter, and the habendum clause stated "To have and to hold, all and singular the aforesaid lands, rights and privileges" to said railroad "and its successors forever."

**3. Deeds; Railroads— deed—so long as—fee simple determinable**

A section of a railroad charter providing that "the lands or right of way so valued by said commissioners, shall vest in said company so long as the same shall be used for the purposes of said railroad," which was incorporated into the granting clause of an 1856 deed to the railroad, created a fee simple determinable with the grantor retaining a possibility of reverter.

**4. Real Property— fee simple determinable—possibility of reverter—extinguishment under Real Property Marketable Act**

The Real Property Marketable Title Act exception under N.C.G.S. § 47B-3(6) for rights-of-way held by railroad companies did not extend to property interests of landowners adjacent to a railroad's right-of-way who held a possibility of reverter in the right-of-way, and the possibility of reverter was extinguished by

the Act when the landowners failed to file notice of their property interests prior to 1 October 1976.

Appeal by plaintiffs from judgment and order entered 27 June 2003 by Judge E. Penn Dameron, Jr. and supplemental judgment entered 29 June 2005 by Judge Laura J. Bridges in Rutherford County Superior Court. Heard in the Court of Appeals 8 March 2006.

*Tomblin & Farmer, PLLC, by A. Clyde Tomblin, and The Cullen Law Firm, by David A. Cohen, for plaintiffs-appellants.*

*Bailey & Dixon, L.L.P., by David S. Coats, and Michael Domonkos for defendant-appellee.*

ELMORE, Judge.

Plaintiffs own property adjacent to a 7.87-mile railroad corridor in Rutherford County. Bechtler Development Corporation (defendant) operates the corridor as a recreational trail. Defendant is a successor-in-interest to the rights of the Wilmington, Charlotte and Rutherford Railroad Company. The Wilmington, Charlotte and Rutherford Railroad Company obtained rights to the land by deed in February of 1856. In July of 1902, Southern Railway Company entered into a lease agreement to operate the railroad corridor. Southern Railway Company was authorized by the Interstate Commerce Commission to abandon the line in Cleveland and Rutherford counties in October of 1988. In October of 1990, Southern Railway—Carolina Division conveyed its interests in the corridor to the Rutherford Railroad Development Corporation. In July of 2000, the Rutherford Railroad Development Corporation and Southeast Shortlines d/b/a Thermal Belt Railways jointly applied to the Surface Transportation Board (STB) for abandonment exemption. Also in July of 2000, defendant filed a request with the STB for a Notice of Interim Trail Use under the National Trails System Act. Defendant then reached an agreement with the Rutherford Railroad Development Corporation and Thermal Belt Railways regarding abandonment.

Defendant took possession of the right of way and began collecting rent from landowners who use the right of way, including plaintiffs. According to plaintiffs, defendant had begun to install water and sewer lines on the subsurface portion of the line. Plaintiffs filed a class action complaint on 25 May 2001 alleging that they are the rightful owners of the railroad corridor that defendant converted into a

recreational trail. Plaintiffs filed a motion for summary judgment and for declaratory judgment on 27 September 2002. Plaintiffs argued that they owned the railroad corridor in fee simple or, in the alternative, that defendant had only the right to use the surface of the corridor and that plaintiffs retained all other uses, including the right to subsurface use. Defendant also filed a motion for summary judgment. On 27 June 2003 the trial court entered an order addressing plaintiffs' request for a declaratory judgment and both parties' motions for summary judgment. The court granted defendant's motion for summary judgment in part and directed the parties to submit to the court a copy of the original charter issued to the Wilmington, Charlotte and Rutherford Railroad Company. Plaintiffs submitted a copy of the charter in July of 2003. On 29 June 2005 the trial court entered a supplemental judgment. The court found that defendant held title to the corridor in fee simple and that plaintiffs have no subsurface rights in the corridor. Plaintiffs filed timely notice of appeal to this Court.

Plaintiffs challenge the declaratory judgment and order entered 27 June 2003 and the supplemental judgment entered 29 June 2005. Plaintiffs assign error to numerous findings of fact entered by the trial court. We review a declaratory judgment to determine whether the trial court's findings of fact are supported by competent evidence and whether its conclusions of law are supported by the findings. *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 702-03, 412 S.E.2d 318, 322 (1992). More generally, where the trial court sits without a jury, this Court reviews the trial court's order to determine whether the findings of fact are supported by competent evidence and whether the conclusions are proper in light of the findings. *Shear v. Stevens Building Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992).

I.

[1] First, plaintiffs except to the trial court's finding that the interest conveyed in the 1856 deed by reference to the charter of the Wilmington, Charlotte and Rutherford Railroad Company was a fee simple. The deed expressly incorporated by reference sections 26 and 27 of the charter as follows:

> we, whose names are hereto subscribed on this and the sheets hereto annexed . . . for the further consideration of the sum of One Dollar to each of the assigned in hand paid by the said Company . . . give, grant and surrender to the Wilmington,

Charlotte and Rutherford Railroad Company, the right of way in, over and upon any land or lands owned by us over which said Company may locate and establish their said road; the part and parcels of said land herein granted, with the right of way thereon, to be ascertained by the engineer of the Company, in strict conformity with the provisions, limitations, and restrictions of the charter incorporating the same, in the manner and intent if the same were condemned under and by virtue of the twenty sixth and twenty seventh sections thereof hereby granted to the said Company . . .

Plaintiffs contend that sections 26 and 27 of the charter are inapplicable to the court's determination of the property interest that the parties intended to transfer in the deed. Essentially, plaintiffs argue that the trial court construed the language of the charter to enlarge the property interest granted by the deed. Sections 26 and 27 of the Wilmington, Charlotte and Rutherford Railroad Company charter read in relevant part as follows:

Sec. 26. *Be it further enacted*, That when any lands or right of way may be demanded by said company, for the purpose of constructing their road, and for the want of agreement as to the value thereof, or from any other cause the same cannot be purchased from the owner or owners, the same may be taken at a valuation to be made by five commissioners . . . .

[A]nd the lands or right of way so valued by the said commissioners, shall vest in the said company so long as the same shall be used for the purposes of said railroad . . . .

Sec. 27. *Be it further enacted*, That the right of said company to condemn lands in the manner described in the 26th section of this act, shall extend to condemning of one hundred feet on each side of the main track of the road . . . .

Plaintiffs assert that section 26 is irrelevant to the instant dispute because the value to be given for the land was agreed upon in the deed. With respect to section 27, plaintiffs assert that it is irrelevant because it only addresses the restrictions on the width of the right of way.

" 'The entire description in a deed should be considered in determining the identity of the land conveyed. Clauses inserted in a deed should be regarded as inserted for a purpose, and should be given a

meaning that would aid the description. Every part of the deed ought, if possible, to take effect, and every word to operate.' " *Realty Corp. v. Fisher*, 216 N.C. 197, 199, 4 S.E.2d 518, 520 (1939) (quoting *Quelch v. Futch*, 172 N.C. 316, 90 S.E. 259 (1916)). Thus, the language of the charter, which is expressly incorporated into the deed, must be given effect if it describes the property interest granted.

The deed recites the property interest as a "right of way in, over and upon" a parcel of land and restricts the railroad's rights to designate the location of the parcel to the rights the railroad would have if the property had been condemned. Sections 26 and 27 of the charter set forth the restrictions on the railroad's rights upon condemnation. Section 27 restricts the railroad company's rights by stating that the land or right of way shall vest in the railroad company so long as it is used for railroad purposes. Therefore, these sections are applicable to the issue of what property rights the grantor intended to convey to the railroad company. In contrast to what plaintiffs assert, the court did not interpret the language of the charter so as to enlarge the property interest granted in the deed; rather, the court properly considered the charter provisions as evidence of the grantor's intent. *See Realty Corp.*, 216 N.C. at 199, 4 S.E.2d at 520; *see also Ellis v. Barnes*, 231 N.C. 543, 544-45, 57 S.E.2d 772, 773 (1950) ("In the interpretation of the provisions of a deed, the intention of the grantor must be gathered from the whole instrument and every part thereof given effect, unless it contains conflicting provisions which are irreconcilable, or a provision which is contrary to public policy or runs counter to some rule of law.").

## II.

**[2]** Next, plaintiffs argue that the trial court erred in granting summary judgment to defendant because the 1856 deed created only an easement to the railroad. The deed to the Wilmington, Charlotte and Rutherford Railroad Company granted it a "right of way" in, over and upon the land. The determination of what property right was granted, then, depends upon the construction of "right of way." Plaintiffs contend that the term "right of way" usually connotes an easement, citing to *Crawford v. Wilson*, 43 N.C. App. 69, 257 S.E.2d 696 (1979). However, the Court in *Crawford* distinguished cases involving a "right of way" granted to a railroad company. *See id.* at 71, 257 S.E.2d at 697. Indeed, in *McCotter v. Barnes*, 247 N.C. 480, 101 S.E.2d 330 (1958), the Supreme Court addressed the grant of a right of way to a railroad company:

**KING ASSOCS., LLP v. BECHTLER DEV. CORP.**

[179 N.C. App. 88 (2006)]

> The term "right of way" has a two-fold meaning: it may be used to designate an easement, and, apart from that, it may be used as descriptive of the use or purpose to which a strip of land is put. It is a matter of common knowledge that the strip of land over which railroad tracks run is often referred to as the "right of way," with the term being employed as merely descriptive of the purpose for which the property is used, without reference to the quality of the estate or interest the railroad company may have in the strip of land.

*McCotter*, 247 N.C. at 485, 101 S.E.2d at 334-35. In *McCotter*, the granting clause of the deed transferred to the railroad company "a tract or parcel of land 100 feet in width . . . ." *Id.* at 484-85, 101 S.E.2d at 334. The Court determined that the term "right of way" in the deed did not reduce the fee simple interest granted in the granting clause to an easement. The Court distinguished another case involving a right of way conveyed to a railroad company. In *Shepard v. R.R.*, 140 N.C. 391, 53 S.E. 137 (1906), the plaintiff conveyed to the railroad company a right of way *over* the land only. The *McCotter* Court indicated that a right of way *over* a parcel of land is merely an easement over that land and not a fee simple interest. 247 N.C. at 487-88, 101 S.E.2d at 336.

In arguing that the deed in the case *sub judice* created only an easement, plaintiffs cite to *Int. Paper Co. v. Hufham*, 81 N.C. App. 606, 345 S.E.2d 231, *disc. review denied*, 318 N.C. 506, 349 S.E.2d 860 (1986). There, the deed from the owner to the railroad company in 1849 granted to the railroad company "the right and privilege . . . to enter upon each and every tract or parcel of land belonging to or held by [the grantor]." *Id.* at 610, 345 S.E.2d at 233-34. This Court concluded that no land was conveyed; only a right and privilege to enter upon the land and construct a railroad line. The Court noted that *McCotter* was distinguishable because in that case the owner granted a parcel of land. *Id.* at 611, 345 S.E.2d at 234.

We disagree with plaintiffs that the facts of the instant case are sufficiently similar to the facts of *International Paper*. Instead, we find the facts here more comparable to the facts of *McCotter*. The 1856 deed granted to the Wilmington, Charlotte and Rutherford Railroad Company a right of way *in, over and upon* any land or lands owned by the grantor. The deed also stated that "the part and parcels of said land herein granted, with the right of way thereon" would be ascertained by the engineer of the railroad company in compliance with the charter. The habendum clause states the following:

TO HAVE TO HOLD, all and singular the aforesaïd lands, rights and privileges to said Wilmington, Charlotte and Rutherford Railroad Company, and its successors forever.

The habendum clause indicates that the interest granted was more than a right or privilege of entry. The habendum clause in *McCotter* contained very similar language: "TO HAVE AND TO HOLD, the aforesaid tract or parcel of land as above described together with all the rights, ways, privileges and easements thereunto belonging or in anywise appertaining unto it the said party of the second party its successors and assigns." *McCotter*, 247 N.C. at 485, 101 S.E.2d at 334. The Supreme Court noted that this habendum clause harmonized with the fee simple interest granted in the granting clause of the deed. *Id.*

The 1856 deed does not expressly grant a "parcel of land" as expressed in the deed in *McCotter*. Nonetheless, the term "right of way" can be harmonized with the other clauses of the deed referring to a parcel of land. Thus, following the reasoning of *McCotter*, the term appears to describe the use of the land and not the nature of the property interest granted. Accordingly, the trial court correctly determined that the deed to the Wilmington, Charlotte and Rutherford Railroad Company granted a fee simple and not merely an easement.

III.

[3] Next, plaintiffs challenge the trial court's finding that the language "so long as" in section 26 of the charter does not render the title an easement but instead qualifies a fee simple, creating a fee simple determinable. Section 26 of the charter provides that "the lands or right of way so valued by the said commissioners, shall vest in the said company so long as the same shall be used for the purposes of said railroad . . . ."

We agree with the trial court that the language of the charter created a fee simple determinable. The granting clause of the deed expressly incorporated sections 26 and 27 of the charter. When language creating a fee simple determinable and possibility of reverter is contained within the granting or habendum clause of a deed, this limitation on the fee simple interest is valid. *See Anderson v. Jackson Co. Bd. of Education*, 76 N.C. App. 440, 446, 333 S.E.2d 533, 536 (1985), *cert. denied*, 315 N.C. 586, 341 S.E.2d 22 (1986). In contrast, where the granting and habendum clauses do not limit the fee simple interest, then any conditional language contained within a separate provision of the deed cannot create a valid fee simple deter-

minable. *See id.*; *Oxendine v. Lewis*, 252 N.C. 669, 672-73, 114 S.E.2d 706, 709 (1960); *Artis v. Artis*, 228 N.C. 754, 760, 47 S.E.2d 228, 231-32 (1948).

Here, the granting clause referred to sections 26 and 27 of the charter in describing restrictions on the railroad company's property interest. The conditional language "so long as" restricting the use of the land for railroad purposes is sufficient to create a fee simple determinable with the grantor retaining a possibility of reverter. *See Station Assoc., Inc. v. Dare County*, 350 N.C. 367, 373-74, 513 S.E.2d 789, 794 (1999) (language creating fee simple determinable need not conform to any set formula; some language indicating the grantor's intent that estate shall terminate on cessation of a specified use is sufficient); *Price v. Bunn*, 13 N.C. App. 652, 659, 187 S.E.2d 423, 427 (1972) (typical language creating fee simple determinable includes "while," "during," or "for so long as").

[4] The trial court also found that the grantors retained the possibility of reverter according to this language but that this future interest was extinguished under the Real Property Marketable Title Act, N.C. Gen. Stat. § 47B-1 *et seq.* Plaintiffs dispute this finding as well.

The General Assembly enacted the Real Property Marketable Title Act in 1973 and expressly stated its purpose:

> It is the purpose of the General Assembly of the State of North Carolina to provide that if a person claims title to real property under a chain of record title for 30 years, and no other person has filed a notice of any claim of interest in the real property during the 30-year period, then all conflicting claims based upon any title transaction prior to the 30-year period shall be extinguished.

N.C. Gen. Stat. § 47B-1 (2005). The Act also provides exceptions that protect property owners from extinguishment of their rights if they fail to file a notice of the property interest within 30 years of receiving title. *See Heath v. Turner*, 309 N.C. 483, 493, 308 S.E.2d 244, 249 (1983) ("The exceptions listed under G.S. § 47B-3 . . . serve as a shield to protect from extinguishment the rights therein excepted."). The exceptions include a right of way of a railroad company or any land held by a railroad company and being used for railroad purposes. *See* N.C. Gen. Stat. § 47B-3 (2005).

If the 30-year period has passed prior to the effective date of the Act, 1 October 1973, then the property interest may be preserved under the Act if registered prior to 1 October 1976. *See* N.C. Gen. Stat.

§ 47B-5 (2005). Applying the Act to the facts here, plaintiffs were required to file notice of their property interest prior to 1 October 1976. It is undisputed that plaintiffs failed to file by this date. However, plaintiffs contend that the future interest was not extinguished because it falls within an exception of the Act. The exception at issue reads as follows:

> Such marketable record title shall not affect or extinguish the following rights:
>
> (6) Rights-of-way of any railroad company (irrespective of nature of its title or interest therein whether fee, easement, or other quality) and all real estate other than right-of-way property of a railroad company in actual use for railroad purposes or being held or retained for prospective future use for railroad operational purposes . . . .

N.C. Gen. Stat. § 47B-3(6) (2005). The exception does not by its plain language extend to property interests of landowners adjacent to the railroad's right of way who hold a possibility of reverter in the right of way. Thus, the trial court correctly concluded that plaintiffs' future interest was extinguished under the Real Property Marketable Title Act.

### IV.

In sum, we hold that the trial court's findings in the 27 June 2003 order and judgment were supported by competent evidence and that the findings supported the conclusions of law. Similarly, we hold that the trial court's findings in the 29 June 2005 supplemental judgment were supported by competent evidence and that the findings, in turn, supported the court's conclusions of law.

Affirmed.

Judges STEELMAN and JACKSON concur.