LEON F. WILLIAMSON, III and wife, CHARLOTTE TOWNSEND, WILLIAM A. WILLIAMSON and wife, SARAH WILLIAMSON, Plaintiffs
v.
RIVER CREST PLANTATION, LLC and STEPHEN C. ATKINS, SR., Defendants
No. COA08-1105
Court of Appeals of North Carolina
Filed September 1, 2009
This case not for Publication
Horne & Horne, PLLC, by Stephen F. Horne, II, for plaintiffs-appellees.
Ward and Smith, PA, by Eric J. Remington, for defendants-appellants.
CALABRIA, Judge.
River Crest Plantation, LLC ("River Crest") and Stephen C. Atkins, Sr. (collectively "defendants") appeal an order dismissing their counterclaims and granting partial summary judgment to Leon F. Williamson, III ("L. Williamson"), Charlotte Townsend ("Townsend"), William A. Williamson ("W. Williamson") and Sarah Williamson (collectively "plaintiffs") upon their claims for injunctive relief and quiet title against River Crest. In addition, the trial court permanently enjoined River Crest from entering upon plaintiffs' properties or engaging in any act to cut trees, vegetation or construct a right-of-way on plaintiff's properties since plaintiffs owned their respective properties in fee simple, free and clear of any claim of easement or other property right. We affirm in part and remand in part.

I. Facts
A dispute arose concerning the existence of an easement over the 60-foot-wide right-of-way ("right-of-way") which bisects a 10 acre tract of land owned by plaintiffs, fronting the Pamlico River in Chocowinity Township, Beaufort County, North Carolina. This right-of-way connects two parcels of land currently owned by River Crest. The language of a deed, executed in 1976, conveyed plaintiffs' property to their predecessors in interest and, defendants argue, created an easement by reservation. In order to resolve this issue, we first review the history of the title.
The properties owned by plaintiffs and defendants were once part of a single tract owned by William Page and his wife ("the Pages"). In 1968, the Pages conveyed this property to three individuals in four parts. One 10 acre parcel ("Fink Property"), currently owned by plaintiffs, was sold to M.R. Fink ("Fink"). Another 10 acre parcel, southeast of the Fink Property ("Cadwell Property"), was sold to George Cadwell, Jr. ("Cadwell"). A 15 acre parcel to the southeast of the Cadwell Property ("Allan Property") was sold to A.R. Allan, Jr. ("Allan"). These three properties, taken together, are contiguous and bounded on the east by the Pamlico River. The Pages conveyed the remainder of their property ("Page Property") to Fink, Cadwell, and Allan, apparently as tenants in common. Around this time, Fink, Cadwell, and Allan formed an entity, known as Pamlico Properties, for the purpose of developing the Page Property.
On or about 22 June 1971, Fink sold the Fink Property to Allan. Subsequently, Cadwell signed a personal check, dated 16 February 1973, to Allan. It appears, by means of the check, Allan conveyed a one-third interest in the Fink property to Cadwell. The copy of the personal check is the only evidence to show that this interest was ever actually conveyed to Cadwell. There is no deed in the record for this transaction.
Allan and Cadwell conveyed the Fink property to J. Delmas Hinson and his wife, Frances L. Hinson ("the Hinsons"), in a deed executed and recorded 7 June 1976 ("deed to the Hinsons"). Immediately following a metes and bounds description of the property, a map and survey by W.B. Duke ("Duke Survey") are referenced, for the purpose of incorporating the legal description by reference into the deed. Then the following language, central to this dispute, appears:
. . . including a perpetual easement over existing roads crossing the property of [Cadwell and Allan] held both individually and in common, to SR 1118 for purposes of ingress and egress. Excepting, however, that part of a 0.04 acre cemetery that lies within the boundaries of said property as shown on the [Duke Survey], and a right of way 60 feet in width running South 25° East approximately 450 feet across said property, the Western edge of which intersects the Northeastern corner of said 0.04 acre cemetery.
The Duke Survey displays and identifies the Fink, Cadwell, and Allan Properties as well as the cemetery, but does not display either a right-of-way over the Fink property or any easement granted to the Hinsons. While the Duke Survey depicts part of the Page Property, there was no identification as such and no indication of the owner of that property. The deed to the Hinsons included several restrictive covenants over the Fink Property concerning its development and use and referenced the potential development of both the Cadwell and Allan Properties.
In 1989, the Hinsons conveyed the Fink Property to Ernest W. Larkin and his wife ("Larkin"). In 2003, Larkin conveyed the property to L. Williamson and Townsend. One month later, L. Williamson conveyed a portion of this parcel to his brother and his brother's wife, W. Williamson and Sarah Williamson. Each of these conveyances were documented and duly recorded by deed. The deeds conveying the property to Larkin and to L. Williamson included identical language concerning the right-of-way: "This conveyance is made subject to the 60 foot right of way which bisects the property as shown on the abovesaid survey recorded in Plat Cabinet E, Slide 3-5." The language in the third deed, conveying the property from L. Williamson to W. Williamson, is substantially similar: "This property is conveyed SUBJECT to a 60-foot right of way and easement shown and depicted upon that map recorded in Plat Cabinet E at Slide 3-5 of the Beaufort County Registry" (capitalization in original).
The map referenced in all three deeds, prepared for Larkin by Woodlief & Associates, P.A., depicted the right-of-way as connecting the Cadwell and Page Properties, both of which are identified on the map. There is no evidence in the record, however, that the right-of-way was ever used or developed until 2006.
Allan died in 1993. Defendant claims, supported by Cadwell's deposition, that Allan devised his interest in the Page Property to Cadwell. However, a certified copy of Allan's will, as admitted to probate, did not mention the Cadwell or Page properties. Instead, the will only mentioned one specific gift  a set of beds to Allan's son. Allan's daughter, Christine Allan, was the beneficiary of the residue of his estate. Although the question of title over the Page Property is not before this Court, Cadwell appears to have had, at that time, at least a one-half interest in the Page property.
On 6 January 2006, Cadwell conveyed both the Cadwell Estate and his interest in the Page Property to River Crest. Included in this conveyance was, "[t]hat right of way sixty (60') feet in width as the same is shown on that map of record in Plat Cabinet E, Slide 3-5, Beaufort County Registry."
After purchasing the land, defendants informed plaintiffs that around 17 November 2006, they intended to enter plaintiffs' property to clear the trees and other vegetation from the right-of-way. Plaintiffs objected. On 20 November 2006, plaintiffs filed an action in Beaufort County Superior Court, alleging that defendants had no easement or any other rights over the Fink Property. The action included claims for trespass, injunctive relief, and to quiet title. On 13 December 2006, Allan's residuary heir, Christine Allan, conveyed all her interest in the Fink Property, specifically including her interest over the right-of-way, to L. Williamson and Townsend by quitclaim deed.
On 2 February 2008, defendants moved for partial summary judgment. The Superior Court granted summary judgment in favor of defendants on the trespass claim, dismissed all of defendants' counterclaims, and granted summary judgment in favor of plaintiffs against River Crest on the claims of injunctive relief and to quiet title. In addition, the trial court permanently enjoined River Crest from entering upon plaintiffs' properties or engaging in any act to cut trees, vegetation or construct a right-of-way on plaintiffs' properties since plaintiffs owned their respective properties in fee simple, free and clear of any claim of easement or other property right. The court found that plaintiffs were owners in fee simple of their respective portions of the Fink Property free and clear of any easement or other property rights of River Crest. Defendants appeal.

II. Interlocutory Appeal
Defendants appeal an interlocutory order. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." Veazey v. Durham, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950).
Appeal of an interlocutory order is appropriate under two circumstances:
First, the trial court may certify that there is no just reason to delay the appeal after it enters a final judgment as to fewer than all of the claims or parties in an action. N.C.G.S. § 1A-1, Rule 54(b) [2007]. Second, a party may appeal an interlocutory order that "affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment."
Dep't of Transp. v. Rowe, 351 N.C. 172, 174-75, 521 S.E.2d 707, 709 (1999)(quoting Veazey, 231 N.C. at 362, 57 S.E.2d at 381). In the instant case, the trial court certified that there was no just reason to delay the appeal of its order, pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) (2007). Thus, this appeal is properly before this Court.

III. Standard of Review
The standard of review on appeal from a summary judgment order is de novo. The question is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. The evidence is viewed in the light most favorable to the non-moving party.
Schwarz & Schwarz, LLC v. Caldwell County R.R. Co., ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2009) (citations omitted). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007).

IV. Easement
Plaintiffs argue that the deed to the Hinsons does not create an easement over the Fink Property because it does not adequately reflect an intention to create an easement and because it does not adequately describe either the easement or the dominant estate. We agree.
"Whether a deed conveys an easement or fee simple title is a question of law." Fisher v. Carolina S. R.R., 141 N.C. App. 73, 79, 539 S.E.2d 337, 340 (2000). A deed purporting to convey an easement must be in writing, and the contents of that writing may only be proven by the writing itself, and not through extrinsic evidence. Tedder v. Alford, 128 N.C. App. 27, 31, 493 S.E.2d 487, 490 (1997). The burden of proving that a sufficient writing exists to memorialize the conveyance of an easement lies with the party asserting its existence. Id.
"No particular words are necessary to constitute a grant, and any words which clearly show the intention to give an easement, which is by law grantable, are sufficient to effect that purpose, provided the language is certain and definite in its terms. . . ." Borders v. Yarborough, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953) (quoting 28 C.J.S. Easements § 24). A deed creating an easement should describe with reasonable certainty the location and nature of the easement created as well as, in the case of an appurtenant easement, the servient and dominant estates. Hensley v. Ramsey, 283 N.C. 714, 730, 199 S.E.2d 1, 10 (1973). The deed must not be so uncertain, vague, and indefinite as to prevent identification of the easement with reasonable certainty. Borders, 237 N.C. at 542, 75 S.E.2d at 543.
In North Carolina, there is a distinction between the legal meanings of the words "except" and "reserve" in the context of conveyances of real property interests. Trust Co. v. Wyatt, 189 N.C. 107, 107, 126 S.E. 93, 94 (1925).
Technically, a reservation is a clause in a deed whereby the grantor reserves something arising out of the thing granted not then in esse, or some new thing created or reserved, issuing or coming out of the thing granted and not a part of the thing itself; whereas, by an exception the grantor withdraws from the effect of the grant some part of the thing itself which is in esse and included under the terms of the grant.
Id.
In the instant case, the deed to the Hinsons reads, "Excepting... a 0.04 acre cemetery. . . and a right of way 60 feet in width running South 25° East approximately 450 feet across said property." Defendants assert that this sentence reserved an easement over the right-of-way appurtenant to the Page Property. However, the word "reserve" does not appear in the deed.
The use of the word "excepting" is not in itself determinative of whether the deed reserved an easement over the right-of-way in the grantors or excepted the right-of-way from the conveyance entirely. However, reading the plain language of the deed in context, there is nothing to suggest that Allan and Cadwell intended to create an easement or any other new right that did not exist prior to the deed. In addition to the right-of-way, the same sentence "excepts" the 0.04 acre cemetery, which was obviously not intended to be the subject of any easement by reservation. There is nothing in the plain language of the deed that suggests that the same word was intended to have a different meaning with regards to the right-of-way.
Furthermore, even if it could be read that the deed to the Hinsons intended to create an easement over the Fink Property, the deed made no attempt to identify a dominant estate or any land which the right-of-way is intended to benefit. If the language clearly reserved and described an easement, then the deed's failure to describe a dominant estate could be treated as a latent ambiguity to be resolved by parol evidence. See Brown v. Weaver-Rogers Assoc., 131 N.C. App. 120, 124-25, 505 S.E.2d 322, 325 (1998). Here, where it is not at all clear that the deed was intended to reserve an easement, the lack of any mention of a dominant estate only further supports the reading that no easement was intended.
We hold that the deed to the Hinsons did not create an easement, and as such the Fink Property was not burdened by an easement when it came into plaintiffs' possession. Rather, the deed excepted the described right-of-way from the conveyance of the Fink Property to the Hinsons. Therefore, fee simple title over the right-of-way remained with the grantors, and no easement was conveyed to River Crest.

V. Ownership of the Right-of-way
In order to determine whether the trial court was correct in finding that plaintiffs are fee simple owners of the entire Fink Property free and clear of any claim by defendants, we must determine the current ownership of the right-of-way.
The deed to the Hinsons named both Allan and Cadwell as grantors of the Fink Property. Allan, however, was the only record owner of the Fink Property at the time the deed was executed, by virtue of the deed from Fink. It does not appear from the record that Cadwell held any legal title over the Fink Property at the time the deed to the Hinsons was executed. What does appear in the record is a copy of a personal check for $2,500.00 to Allan from Cadwell for the purchase of a one-third interest in the Fink Property. The check was dated 16 February 1973, more than three years before the conveyance of the Fink Property to the Hinsons. The check contained the following notation: "For purchase of [one-third] interest in [ten] acre tract of land bound on Pamlico River." While this check appears to memorialize a contract to sell the Fink Property, it is not a deed, because there are no operative words of conveyance. See Pope v. Burgess, 230 N.C. 323, 325-26, 53 S.E.2d 159, 160-61 (1949) (holding that while technical operative words of conveyance are not necessary, a mere statement of intention of the parties is not sufficient to support a valid deed). There is no evidence in the record that Allan performed under the contract and actually conveyed the property to Cadwell.
Therefore, it appears from the record that Allan was the sole owner in fee simple of the right-of-way when he died in 1993 and devised all his real property to his residuary heir, Christine Allan. Subsequently, Christine Allan quitclaimed her interest in the right-of-way to L. Williamson and Townsend. Therefore, we hold plaintiffs are the fee simple owners of the right-of-way described in the deed to the Hinsons.

VI. Conclusion
We affirm the trial court's ruling that plaintiffs hold title to the Fink Property free and clear of any claim of easement or right-of-way by defendant River Crest. We hold that the deed to the Hinsons did not create an easement over the Fink Property, but rather withheld the described right-of-way from the conveyance, leaving it in the fee simple ownership of Allan. We also hold that plaintiffs now hold fee simple title over the right-of-way by virtue of the quitclaim deed from Christine Allan, Allan's residuary heir.
We affirm the trial court's grant of summary judgment for the plaintiffs on their claims for injunctive relief and to quiet title, and remand the case to the trial court for further proceedings regarding the remaining claims, as noted in the trial court's order of 24 June 2008.
Affirmed in part and remanded in part.
Judge HUNTER, Jr., Robert N. concurs.
Judge HUNTER, Robert C. concurs in the result.
Report per Rule 30(e).