D. C. McCOTTER, SR., J. MUSE McCOTTER AND D. C. McCOTTER, JR., TRADING AS D. C. McCOTTER & SON, v. HUGH H. BARNES AND H. FOLEY BARNES.

(Filed 10 January, 1958.)

1. **Railroads § 15—**

A conveyance of land for use as a railroad right of way by deed in regular form of bargain and sale, reciting a valuable consideration, is presumptively a deed of purchase within the meaning of G.S. 60-37(4), and must be interpreted as an ordinary deed, so that when the granting clause is sufficient in form to convey the fee simple and the *habendum* and warranties are in harmony therewith, it conveys the fee and not a mere easement. *Shepard v. R. R.*, 140 N.C. 391, cited and distinguished.

2. **Deeds § 11—**

Where the granting clause, *habendum* and warranties of a deed are plain and unambiguous as to the quality of the estate conveyed, there is no room for construction to ascertain the intent.

3. **Same—**

A conveyance will be construed to be in fee simple unless an intent to convey an estate of less dignity is apparent from the plain and express language of the instrument. G.S. 39-1.

4. **Deeds § 13a: Railroads § 15—**

Where the granting clause in a deed purports to convey the fee and the *habendum* and warranties are in harmony therewith, a clause in the description that the conveyance was a right of way 100 feet wide does not limit the conveyance to an easement.

5. **Railroads § 15—**

The term "right of way" has a two-fold meaning: one, to designate an easement, and the other, as descriptive of the use or purpose to which a strip of land is put, without reference to the quality of the estate.

6. **Deeds § 13a—**

Where the granting clause purports to convey an estate in fee simple and the *habendum* and the warranties are in harmony therewith, other clauses in the deed repugnant to the interest thus conveyed are ineffective.

7. **Deeds § 11—**

The fact that a deed is written by insertions in a deed form is without significance.

**8. Deeds §§ 13a, 16b: Railroads § 15—**

A clause in the description of a fee simple deed that "there shall be no building other than for railroad use" is at most a personal, restrictive covenant, which does not run with the land, and therefore, after the death of grantors and the transfer of the property after its use for railroad purposes had ceased, the clause is without force and effect, since its purposes and objects no longer exist.

APPEAL by plaintiffs from *Fountain, Special Judge*, at February Term, 1957, of PAMLICO.

Civil action to restrain trespass and to try title to land, involving interpretation of a deed.

The plaintiffs allege that they are the owners and in possession of a strip of land in Pamlico County, which was part of the roadbed and right of way of the now abandoned Washington-Vandemere branch of the Atlantic Coast Line Railroad Company. The strip of land is 100 feet wide along the east line of N. C. Highway No. 304 where the right of way crossed the highway, and runs back southeastwardly over the abandoned right of way a distance of about 488 feet. The plaintiffs further allege that the defendants have barricaded the plaintiffs' entrance to the land and in so doing are committing a continuing trespass thereon. The defendants, answering, deny the trespass and allege that they own the land in fee simple.

The case was heard below on an agreed statement of facts. These in pertinent part are the facts agreed:

"1. Under date of September 14, 1904, A. P. Barnes and wife, Drussilla A. Barnes, executed and delivered a deed of conveyance to the Carolina Land and Improvement Company, which is duly of record in Book 39 at page 209, Office of the Register of Deeds of Pamlico County, . . ." The deed is in words and figures as follows:

"STATE OF NORTH CAROLINA
COUNTY OF PAMLICO.

THIS INDENTURE, made and entered into, on this the *14* day of *September*, A. D., *1904* by and between *A. P. Barnes & wife Drusillia A.* of the county and State aforesaid as par*ties* of the first part and 'THE CAROLINA LAND AND IMPROVEMENT COMPANY' a corporation duly created and existing under and by virtue of the laws of the State of North Carolina as party of the second part.

WITNESSETH :- That the said par*ties* of the first part for and in consideration of the sum of *Two (2.00) Dollars,* to them in hand this day paid by said party of the second part, the receipt of which is hereby forever admitted, released

McCotter v. Barnes.

and remised, have given, granted, bargained and sold and by these presents do hereby give, grant, bargain and sell unto the party of the second part, its successors and assigns, a tract or parcel of land *100* feet in width to be cut out of the following described tract of land situated, lying and being in the county and State aforesaid and in No. 3 township adjoining the lands of *C. A. Flowers, S. H. Muse and others, A right of way 100 feet wide (To be located by said party of second part and when so located to become a part of this description) across the homestead tract. The said location to be through the southwest corner of said tract of land. There shall be no building other than for railroad use.* The said tract hereby conveyed is to be *100* feet in width and to extend through the entire tract above described.

. To HAVE AND TO HOLD, the aforesaid tract or parcel of land as above described together with all the rights, ways, privileges and easements thereunto belonging or in anywise appertaining unto it the said party of the second part its successors and assigns. And the said par*ties* of the first part on behalf of *themselves their* heirs and assigns hereby covenant to and with the said party of the second part on behalf of itself, its successors and assigns as follows, to wit:

1st. That they are seized of the said property above conveyed in fee.

2nd. That the same is free and clear from any and all encumbrances.

3rd. That they will forever warrant and defend the title to the said land against the lawful claims of any and all persons Claiming by Through or Under Them. PROVIDED NEVERTHELESS, That if the said party of the second part shall fail to build, complete and put in operation a Rail Road either electric or steam for conveying passengers and freight on the land above described within a period of *five* years from the date hereof then the estate hereby conveyed is to cease and determine and the property hereby conveyed is to revert to and become the property of the grantors herein. But if a Rail Road as above specified shall be built by the said company, its successors or assigns within the period above provided, then and in that event this conveyance is to become absolute without the power of revocation from any cause whatsoever and the said par*ties* of the first part on behalf of *them*selves, *their* heirs and assigns hereby, for the consideration aforesaid, cov-

enant to and with said second party, its successors and assigns, that they will procure such further assurances of title as may be necessary and will and do hereby release and remise any and all claims for damages arising from the building of the said Road not arising from the negligence of the said Company, its successors, assigns, agents, employees, or contractors. In testimony whereof the said par*ties* of the first part *have* hereunto set their hand*s* and seal*s* this the day and year aforesaid."

"The written portion of the foregoing deed is underlined as distinguished from the printed portion."

"2. That the Carolina Land and Improvement Company went into possession of the land described in the deed, and the railroad specified in the deed was built within the five-year period therein provided.

"3. That by mesne conveyances whatever right, title and interest passed under the deed above set out vests now in the plaintiffs in this action who are in possession of the land described in the complaint and in said deed, said land being located as shown by letters A. B. C. D. and E on a map prepared by Darrel D. Daniels, C. E. . . ." (A copy of the map was attached to the facts agreed; however, it is here omitted as not being pertinent to decision. It definitely delineates the plot of land, about 100 feet wide and 488 feet long, stipulated in the facts agreed as the land embraced in the complaint and in the deed.)

"4. That on or about the 31st day of December, 1952, the railroad running from Washington, N. C., to Vandemere, N. C., across the land described in the complaint, was abandoned by the railroad company and the tracks removed, and it is no longer being used for railroad purposes.

"5. That subsequent to the execution of the deed referred to in paragraph 1, A. P. Barnes and Drussilla A. Barnes died intestate, and among their heirs at law are the defendants; the defendant Hugh H. Barnes, by deed dated 14 day of May, 1954, and recorded in the office of the Register of Deeds of Pamlico County in Book 117, page 24, acquired all of the right, title and interest of his co-tenants except the interest of the defendant H. Foley Barnes in and to the lands described in the complaint, . . ."

From judgment decreeing that the plaintiffs have no title to the land, and that the defendants are the owners thereof in fee simple, the plaintiffs appeal.

*Barden, Stith & McCotter for plaintiffs, appellants.*
*Robert G. Bowers and Sam J. Morris for defendant, appellees.*

JOHNSON, J. The only question for decision is this: Did the deed made by A. P. Barnes and wife to The Carolina Land and Improvement Company convey fee-simple title or only an easement in the strip of land in controversy?

If the deed conveyed only an easement, the estate of the railroad company ceased and terminated when its tracks were removed and the railroad was abandoned, and the defendants, having succeeded to the rights of A. P. Barnes, would be entitled to an affirmance of the judgment below. On the other hand, if the deed conveyed the strip of land in fee simple, title has passed to the plaintiffs by mesne conveyances from the grantee of Barnes, and the judgment below should be reversed.

Manifestly the deed is a railroad-purpose deed. At the time of its execution the general powers of railroad corporations were prescribed by Chapter 138, Public Laws of 1871-1872. The pertinent parts of this Act, then codified as Sections 1957 (2) and (3) of the Code of 1883, now codified as G.S. 60-37, provided that "Every railroad corporation shall have power: . . . (3) To Take Property by Grant.—To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only. 4. To Purchase and Hold Property.—To purchase and hold and use all such real estate and other property as may be necessary for the construction and maintenance of its railroad and the stations and other accommodations necessary to accomplish the object of its incorporation."

The instant deed is a regular form deed of bargain and sale. It recites a valuable consideration. Upon the facts agreed and on this record, the deed is presumptively a deed of purchase within the meaning of the section of the Act of 1871-1872 now codified as G.S. 60-37 (4). This being so, the deed must be interpreted as an ordinary deed. When this is done, it is manifest that the deed conveys title in fee simple:

The granting clause in the Barnes deed conveys an unqualified fee-simple estate: "That the said parties of the first part for and in consideration of the sum of Two (2.00) DOLLARS, to them in hand this day paid by said party of the second part, the receipt of which is hereby forever admitted, released and remised, have given, granted, bargained and sold and by these presents do hereby give, grant, bargain and sell unto the party of the second part, its successors and assigns, a tract or parcel of land 100 feet in width to be cut out of the following described tract of land situated lying and being in the county and State

aforesaid and in No. 3 township adjoining the lands of C. A. Flowers, S. H. Muse and others. . . ."

The *habendum* clause places no limitation on the estate in fee conveyed by the granting clause: "To Have and to Hold, the aforesaid tract or parcel of land as above described together with all the rights, ways, privileges and easements thereunto belonging or in anywise appertaining unto it the said party of the second part its successors and assigns."

The covenants of seizin and warranty harmonize with the fee previously granted: "And the said parties of the first part on behalf of themselves their heirs and assigns hereby covenant to and with the said party of the second part on behalf of itself, its successors and assigns as follows, to wit: 1st. That they are seized of the said property above conveyed in fee. . . . 3rd. That they will forever warrant and defend the title to the said land against the lawful claims of any and all persons Claiming by Through or Under Them."

Since all the operative clauses of the deed refer to a fee-simple estate, without restriction or limitation, it necessarily follows that no ambiguity or contradiction is disclosed by these clauses. Hence, as to these clauses there is no need for application of the ordinary rules of construction. *Jackson v. Powell*, 225 N.C. 599, 35 S.E. 2d 892.

Moreover, the plaintiffs' contention that the Barnes deed conveyed a fee is supported by Ch. 148, Public Laws of 1879, now codified as G.S. 39-1, which provides that a conveyance shall be construed to be a conveyance in fee unless "such conveyance in plain and express words shows, or it is plainly intended by the conveyance or some part thereof, that the grantor meant to convey an estate of less dignity."

We have given consideration to the defendants' contention that the use of the term "right of way" in the description limits the conveyance to an easement. The contention is untenable. The term "right of way" has a two-fold meaning: it may be used to designate an easement, and, apart from that, it may be used as descriptive of the use or purpose to which a strip of land is put. It is a matter of common knowledge that the strip of land over which railroad tracks run is often referred to as the "right of way," with the term being employed as merely descriptive of the purpose for which the property is used, without reference to the quality of the estate or interest the railroad company may have in the strip of land. 77 C.J.S., 394. Here, we think the term "right of way" was used as merely descriptive of the purpose to which the land was to be put, and was not intended to cut down to the easement the fee conveyed in the granting clause. Annotation: 132 A.L.R., 142, 150. But

in any event, under application of the rule of construction that the granting clause will prevail in case of repugnancy, the term "right of way" as here used in the description must yield to the granting clause in fee, and especially so in view of the fact that the granting clause harmonizes with the *habendum* and with the covenants of seizin and warranty. *Artis v. Artis,* 228 N.C. 754, 47 S.E. 2d 228; *Jeffries v. Parker,* 236 N.C. 756, 73 S.E. 2d 783; *Griffin v. Springer,* 244 N.C. 95, 92 S.E. 2d 682; *Edwards v. Butler,* 244 N.C. 205, 92 S.E. 2d 922.

In *Artis v. Artis, supra,* at p. 761, it is stated: "Hence it may be stated as a rule of law that where the entire estate in fee simple, in unmistakable terms, is given the grantee in a deed, both in the granting clause and *habendum,* the warranty being in harmony therewith, other clauses in the deed, repugnant to the estate and interest conveyed, will be rejected."

Here the fact that the description was inserted in a form deed is without controlling significance. *Jeffries v. Parker, supra.*

The clause in the description purporting to limit the property to "railroad use" is also without significance. Conceding that this clause may have had operative force as a restrictive covenant, at most it was a covenant personal to the grantors, which is no longer enforceable, now that (1) the grantors are dead, (2) the railroad has been abandoned, and (3) title to the right of way property has passed from the original owners. It is elemental that a personal covenant does not run with the land. *Maples v. Horton,* 239 N.C. 394, 80 S.E. 2d 38; *Craven County v. Trust Co.,* 237 N.C. 502, 517, 75 S.E. 2d 620, 631; *Phillips v. Wearn,* 226 N.C. 290, 37 S.E. 2d 895. See also Annotation: 132 A.L.R. 142, 163. Besides, a restrictive covenant ordinarily loses its operative force when its purposes and objects no longer exist. *Cessante causa, cessat effectus.*

It follows from what we have said that the Barnes deed conveyed title in fee simple to the grantee.

We have not overlooked the decision in *Shepard v. Railroad,* 140 N.C. 391, 53 S.E. 137, wherein it is stated in the third headnote that, "A deed to the right of way gives a railroad no more rights than it would have acquired by condemnation." This headnote is based upon the following statement appearing in the opinion, at p. 393: "The deed to the right of way gives the defendant no more rights than he would have acquired by condemnation. *Hodges v. Tel. Co.,* 133 N.C. 233." Upon a casual reading of the foregoing headnote and opinion in the Shepard case, it is understandable how the decision has been misinterpreted to stand for the general proposition that land purchased by a railroad company for a right of way passes only an ease-

ment, no matter how the deed may be worded. However, a study of the decision, in connection with the record in the case, discloses that the decision stands for no such proposition. In fact, the foregoing excerpt may be treated as *obiter dictum*. The record in the case presented no question for deed construction. The only question for decision was one of statutory construction. The plaintiff Shepard owned a two-acre lot in the town of Edenton which he used as a pasture. The defendant railroad company, under deed from the plaintiff, built its road across the lot. In doing so, it tore down his fence and failed to erect cattle guards. The plaintiff sued for damages, relying on a statute which required a railroad company in constructing its road over enclosed land to erect and maintain cattle guards at the points of entrance to and exit from the enclosure. The defendant, answering, alleged (1) that in crossing the land it was acting under "a deed executed to it by the plaintiff" and that it "committed no act which it had not the right to commit under the deed"; and (2) that the statute did not apply to the plaintiff's lot for the reason it was located in the town of Edenton where by the charter and laws of the town stock were not permitted to run at large. There was a verdict and judgment in favor of the plaintiff in the amount of $15 for damage to the fence and $26 damages for failure to put up cattle guards. The defendant appealed from the judgment only in respect to the $26 award of damages for failure to put up guards. The record on appeal discloses and the appellant's brief states that the only question presented for decision is whether the cattle guard statute (Sec. 1975 of the Code of 1883) applied to an enclosed town lot. The Court resolved the question in favor of the plaintiff and upheld his recovery of $26. The record discloses that the defendant offered no evidence, and the deed is not included in the record. In fact, the only reference to the deed found in the case on appeal is this statement (R. p. 8) ; "The plaintiff had conveyed to the defendant, by deed in due form, a right of way over the said lot before the road was constructed." From the statement that the deed conveyed "a right of way *over* the lot," (italics added) the natural inference is that the term "right of way" was used in the sense of an easement—an easement *over* the lot. It thus appears that the defendant claimed nothing more than an easement over the lot. This being so, it would seem that the Court was assuming that the deed on its face granted only an easement when it stated by way of obiter, "The deed to the right of way gives the defendant no more rights than he (it) would have acquired by condemnation." This interpretation of the foregoing excerpt from the Shepard decision is fortified by the fact that *Hodges v. Tel. Co.*, 133 N.C. 225, 45

S.E. 572, is cited as authority. An examination of the Hodges case discloses that the deed there involved granted only a "right of way and easement."

We conclude therefore that the decision in *Shepard v. Railroad, supra,* is factually distinguishable from the instant case and is not authority for the proposition that the conveyance here involved should be cut down to an easement.

The judgment below is
Reversed.