S. B. FRINK AND DAVIS C. HERRING v. NORTH CAROLINA BOARD OF TRANSPORTATION

No. 7813SC650

(Filed 19 June 1979)

**Eminent Domain § 13; State § 2.1— Intracoastal Waterway right-of-way—fee simple in State**

In an earlier action to condemn the lands of plaintiff's predecessor in title for the building of a portion of the Intracoastal Waterway, the State acquired fee simple title to the land in question, though the interest to be acquired by the State was always referred to as a right-of-way, since that term described the use to which the land was to be put and did not limit the State's interest to an easement; plaintiff's predecessors in title were divested of all their "right, title, interest and estate in and to the lands, premises, and waters"; and the subsequent deed of easement from the State to the United States asserted that the State was "the owner of and in the possession of" the land in question. Therefore, plaintiffs did not have a compensable interest in land located within the Intracoastal Waterway right-of-way utilized by the State in the construction of a new bridge and roadway, as the State had already acquired the land in fee from plaintiffs' predecessors in title.

APPEAL by defendants from *Herring, Judge.* Judgment entered 1 June 1978 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 3 April 1979.

Plaintiffs instituted this inverse condemnation action seeking compensation for the alleged taking of certain real property which they claim. The property is located within the Intracoastal Waterway right-of-way where the new Oak Island Bridge has been constructed. Plaintiffs contend they own this land subject to an easement for the canal right-of-way. Defendant contends that the State acquired the land in fee.

The source of this controversy is a consent judgment in a condemnation action in 1934 instituted pursuant to Chapter Two, Section Two, of the Session Laws of 1931. This act provided for the acquisition of a right-of-way for the United States to build the Intracoastal Waterway between the Cape Fear River and the North Carolina-South Carolina Line. It was enacted in accordance with the River and Harbor Act of 3 July 1930 authorizing the construction of this waterway pursuant to H.R. 41, 71st Congress, 1st Session (1929) which required that local interests provide the right-of-way without cost to the United States. Section Two of Chapter Two of the Session Laws of 1931 provides, in pertinent part:

> "If the title to any part of the lands required by the United States Government for the construction of such inland waterway from the Cape Fear River at Southport to the North Carolina-South Carolina State line shall be in any private person, company or corporation . . . or if it may be necessary, for the purpose of obtaining the proper title to any lands, the title to which has heretofore been vested in the State Board of Education, then the Transportation Advisory Commission . . . in the name of the State of North Carolina, is hereby authorized and empowered, acting for and in behalf of the State of North Carolina, to secure a right-of-way one thousand to seventeen hundred fifty feet wide for said inland waterway across and through such lands or any part thereof, by purchase, donation or otherwise, through agreement with the owner or owners where possible, and when any such property is thus acquired, the Governor and Secretary of State shall execute a deed for the same to the United States; and if for any reason the said commission shall be unable to secure such right-of-way across any such property by voluntary donation by and/or with the owner or owners, the said Commission acting for and in behalf of the State of North Carolina is hereby vested with the power to condemn the same, and in so doing, the ways, means, methods and procedure of chapter thirty-three of the Consolidated Statutes of one thousand nine hundred nineteen, entitled 'Eminent Domain,' shall be used by it as near as the same is suitable for the purposes of this act, and in all instances, the general and special benefits to the owner thereof

shall be assessed as offsets against the damages to such property or lands.

*       *       *

Whenever proceedings in condemnation are instituted in pursuance of the provisions of this section, the said commission upon the filing of the petition or petitions in such proceedings, shall have the right to take immediate possession, on behalf of the State of such lands or property to the extent of the interest to be acquired and the order of the Clerk of the Superior Court of the county where the action is instituted, shall be sufficient to vest the title and possession in the State through the Transportation Advisory Commission. The Governor and Secretary of State shall, upon vesting of the title and possession, execute a deed to the United States and said lands or property may then be appropriated and used by the United States for the purposes aforesaid: *Provided*, that in every case the proceedings in condemnation shall be diligently prosecuted to final judgment in order that the just compensation, if any, to which the owners of the property are entitled may be ascertained and when so ascertained and determined, such compensation, if any, shall be promptly paid as hereinafter in this act provided.

*       *       *

All sums which may be agreed upon between the said Transportation Advisory Commission and the owner of any property needed by the United States Government for said inland waterway and all sums which may be assessed in favor of the owner of any property condemned hereunder, shall constitute and remain a fixed and valid claim against the State of North Carolina until paid and satisfied in full, but the order of the clerk when entered in any condemnation proceeding shall divest the owner of the land condemned of all right, title, interest and possession in and to such land and property."

Pursuant to this provision the State petitioned to condemn "any right, title or interest" of the prior owners of the land in question. The final decree in that action, rendered in 1934, stated that the prior owners received a certain sum in full settlement of

"all their rights, title, interest and estate in and to said premises
... to the extent, for the purpose, and in the manner as provided
and set forth in Chapter 2 Public Laws of North Carolina, Session
1931." The decree then ordered that the owners

> "be, and they are hereby divested of all right, title, interest
> and estate in and to the lands, premises, and waters herein-
> after described, to the extent, in the manner and for the pur-
> pose as provided and set forth in Chapter 2 Public Laws of
> North Carolina, Session 1931, and that such title and use as
> provided, authorized and contemplated by said Statutes is
> hereby vested in the said State of North Carolina . . . ."

The State subsequently deeded to the United States a
perpetual right-of-way for the waterway and a perpetual right
and easement to enter the land not excavated for the waterway
to deposit dredged material. The deed stated that the State was
"the owner of and in the possession of" the land in dispute.

Plaintiffs' title to the land in dispute was derived from the
defendants in the condemnation action. It was stipulated at trial
that plaintiffs' title to this land was subject to the interest ac-
quired by the State for the Intracoastal Waterway and the only
issue to be decided was the extent of that interest. The trial
court held that the State acquired only an easement and,
therefore, plaintiffs had a compensable interest in the property
taken to build the new Oak Island Bridge. From this judgment,
the defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney
General Eugene A. Smith, for the State.*

*Frink, Foy and Gainey, by Henry G. Foy, for plaintiff ap-
pellees.*

VAUGHN, Judge.

The ultimate issue presented for resolution is whether these
plaintiffs have a compensable interest in the land utilized by the
State of North Carolina in the construction of the new bridge and
roadway. We hold that they do not. In reaching this conclusion,
however, it is not absolutely necessary to decide that the State
did indeed acquire title in fee simple absolute. It suffices to say

that when the State acquired its interest in the property for the canal right-of-way, it also clearly acquired the inherent right to construct bridges and roadways across the property.

We do elect to discuss, however, the question of whether the State acquired title in fee simple or whether it merely acquired an easement in all of the lands within the canal right-of-way. In Chapter Two of the Session Laws of 1931, neither the term "fee simple" nor the term "easement" is used. The act repeatedly uses "right-of-way" to describe the interest to be acquired by the State. In *McCotter v. Barnes*, 247 N.C. 480, 101 S.E. 2d 330 (1958), the Court stated that the term "right-of-way" has a twofold meaning. "[I]t may be used to designate an easement, and, apart from that, it may be used as descriptive of the use or purpose to which a strip of land is put." *McCotter v. Barnes, supra,* at 485. In *McCotter*, the land in controversy had been used by the railroad until abandoned. The deed designated the land conveyed as a right-of-way. The Court held that a fee simple was conveyed, noting that it is common knowledge that the land over which railroad tracks are laid is often called the right-of-way to describe the use of the land and not the quality of the estate. Furthermore, the granting clause described the property conveyed as a "tract hereby conveyed", with "right-of-way" used only in the description. Thus the description must yield to the granting clause conveying the fee. *See also Pearson v. Chambers*, 18 N.C. App. 403, 197 S.E. 2d 42 (1973); 77 C.J.S. *Right* 392 (1952).

In the statute in question, it appears that the term "right-of-way" is used to describe the use of the land and not to limit the State's interest to an easement. Although H.R. 41, 71st Congress, 1st Session (1929) requires that the United States be given only an easement with the fee remaining in possession of local interests, this does not restrict the interest to be acquired by the State. We note that Section Two of the act provides that, in case of condemnation, all sums assessed in favor of the owners of property taken shall be a valid claim against the State "but the order of the clerk when entered in any condemnation proceeding shall divest the owner of the land condemned of all right, title, interest and possession in and to such land and property." This provision seems to reflect an intention that the State was to acquire a fee. That opinion finds further support in the 1934 decree itself. In that judgment, the plaintiffs' predecessors in title were divested

of all of their "right, title, interest and estate in and to the lands, premises, and waters." The conveyance of "all the right, title, and interest in the land is certainly sufficient to pass the land itself." *Coble v. Barringer,* 171 N.C. 445, 448, 88 S.E. 518 (1916). Finally, the deed of the easement from the State to the United States asserted that the State was "the owner of and in the possession of" the land in question.

Plaintiffs have no compensable interest in the land utilized by defendant in the construction of the bridge and roadway within the canal right-of-way. The judgment of the trial court is, therefore, reversed.

Reversed.

Judges ERWIN and MARTIN (Harry C.) concur.