GYPSUM RANCH CO., LLC, a Colorado limited liability company, Plaintiff–Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF GARFIELD, State of Colorado, a quasi-municipal corporation, Defendant,

and

Antero Resources II Corporation, a Delaware corporation doing business in Colorado as Antero Resources Corporation, and Department of Transportation, State of Colorado, an agency of the State of Colorado, as successor in interest to the Colorado Department of Highways, Defendants–Appellees.

No. 08CA0399.

Colorado Court of Appeals, Div. VII.

April 16, 2009.

* Sitting by assignment of the Chief Justice Under the provisions of Colo. Const. art. VI, § 5(3) and

§ 24–51–1105, C.R.S.2008.

Balcomb & Green, P.C., Scott Grosscup, Edward Mulhall, Jr., Glenwood Springs, Colorado, for Plaintiff–Appellant.

No Appearance for Defendant Board of County Commissioners of the County of Garfield.

Bjork Lindley Little PC, David R. Little, Denver, Colorado, for Defendant–Appellee Antero Resources II Corporation.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Larry D. Tannenbaum, Senior Assistant Attorney General, Eric Meyer, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee Department of Transportation.

Opinion by Judge FURMAN.

In this case we are asked to decide who owns the oil and gas rights underlying a parcel of property that the Colorado Department of Highways (CDOH) condemned in 1975 to acquire right-of-way and access for a highway. Plaintiff, Gypsum Ranch Co. LLC (Gypsum Ranch), appeals the district court's summary judgment in favor of defendants, Antero Resources II Corporation (Antero), Colorado Department of Transportation, State of Colorado, and Board of County Commissioners of the County of Garfield (collectively, CDOT). We reverse and remand.

## I.   Background and Proceedings

In 1975, CDOH filed a Petition in Condemnation against Agnes Hunt to acquire a portion of the right-of-way for the construction of a highway through Garfield County. The petition sought immediate possession of the property "to proceed with the construction of the highway improvement."

Hunt disputed the value of the property and compensation based on the presence of gravel deposits on the property. In 1987, the district court issued a Rule and Order awarding compensation to Hunt for the "taking of said property and all interests therein," and vesting "title to said property,

together with all appurtenances thereto belonging" in CDOH. The Rule and Order did not mention subsurface mineral interests. The Rule and Order was recorded as if it were a deed of conveyance.

In 2000, Gypsum Ranch acquired Hunt's property, subject to CDOH's acquisitions by condemnation.

In 2006, Gypsum Ranch filed a complaint, alleging that CDOH, now CDOT, had condemned and acquired only a right-of-way across the land, with a right of subsurface support. Gypsum Ranch sought to quiet title to and obtain a declaratory judgment regarding the subsurface mineral interest. Antero, an oil and gas operator that holds leases to develop and produce oil and gas from both Gypsum Ranch and CDOT, was joined in the proceedings.

CDOT answered, contending it had acquired a fee simple that included both the surface estate and subsurface mineral interests. CDOT also filed a counterclaim and cross-claims, seeking both to quiet title in itself and a declaration that it owned the disputed property in fee simple absolute and so was entitled to the financial benefits from the oil and gas lease with Antero. Antero did not take a position on the quiet title issue, either in the trial court or on appeal, but filed a brief to protect its own interests in the leases.

Gypsum Ranch and CDOT both filed motions for summary judgment. In 2008, the district court granted summary judgment against Gypsum Ranch and in favor of CDOT, finding CDOT had acquired a fee simple absolute in 1987 that included the mineral estate. The court concluded gravel deposits were part of the mineral interests because Hunt had argued that the value of gravel deposits on her land must be considered as part of the condemnation, and the value paid by CDOH/ CDOT included both the mineral and gravel interests and surface estates. The court also concluded that, under section 43–1–210(1), C.R.S.2008, the "useless remainder" statute, CDOH/CDOT was allowed to condemn the mineral estate if the landowner failed to exercise the option to keep the mineral and gravel interests, and

Hunt had not done so. Accordingly, the court determined that Gypsum Ranch was not entitled to receive any benefits, including royalties associated with the disputed property.

Gypsum Ranch appeals the district court's summary judgment.

## II. Summary Judgment

Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Struble v. Am. Family Ins. Co.,* 172 P.3d 950, 955 (Colo.App.2007). We review de novo a district court's grant of summary judgment. *West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002).

Gypsum Ranch argues the district court erred in granting summary judgment in favor of CDOT. Gypsum Ranch contends (1) because CDOT's power to condemn was limited to a surface roadway easement, the condemnee retained the subsurface mineral interests; (2) the district court erred in equating gravel rights with mineral rights; and (3) the district court erred in applying the "useless remainder" statute to this case. We address each contention in turn.

## III. Subsurface Mineral Interests

Gypsum Ranch first contends CDOT acquired a right-of-way that was a surface interest or easement. However, we need not determine the exact nature of the interest acquired because we conclude, based on Colorado's eminent domain proceedings statute, that Hunt retained the mineral interest.

### A. Standard of Review

■ "Statutory interpretation is a question of law that we review de novo." *Clyncke v. Waneka,* 157 P.3d 1072, 1077 (Colo.2007). When interpreting a statute, we give effect to the legislative intent. To determine that intent, we look first to the statutory language. *Id.* We construe words and phrases in context and according to common usage unless they have acquired a technical meaning by legislative definition. *Colo. Water Conserva-*

*tion Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 597 (Colo. 2005). When the legislature defines a term, that definition governs. *Id.*

### B. Analysis

■ Colorado's eminent domain statute pertaining to state highways gives authority to CDOH/CDOT to acquire land for highway purposes. § 43–1–208, C.R.S.2008. That authority, however, is limited by Colorado's eminent domain proceedings statute, which limits CDOT's ability to acquire any interest in mineral deposits other than those required for subsurface support:

> [T]he petitioner shall become seized in fee unless a lesser interest has been sought, except as provided in this section, of all such lands, real estate, claims, or other property described in said rule as required to be taken, and may take possession and hold and use the same for the purposes specified in such petition.... No right-of-way or easement acquired by condemnation *shall ever give the petitioner any right, title, or interest* to any vein, ledge, lode, deposit, [oil, natural gas, or other mineral resource] found or existing in the premises condemned, except insofar as the same may be required for subsurface support.

§ 38–1–105(4), C.R.S.2008 (emphasis added) (in effect in 1975; material in brackets added in 2008). Thus, we conclude, based on Colorado's eminent domain proceedings statute, that in the absence of a specific and unequivocal conveyance of her mineral interests, Hunt retained those mineral interests.

■ Nonetheless, CDOT argues that section 38–1–105(4) applies only to easement interests, and therefore does not apply to the disputed transaction, which it characterizes as condemnation of a fee simple absolute. CDOT argues that the term "right-of-way" contained in section 38–1–105(4) is limited to describing the purpose for which the land was used, rather than describing some estate less than fee simple absolute. *See Hutson v. Agric. Ditch & Reservoir Co.,* 723 P.2d 736, 739 (Colo.1986)("right of way" has two-fold meaning: it may be used to designate easement, or may be descriptive of use or pur-

pose to which a strip of land is put). We disagree.

First, section 38–1–105(4) states plainly that CDOT could not condemn the mineral interests in land taken for a right-of-way, regardless of the exact nature of the fee interest implied by the term "right-of-way."

Second, the property in question was taken for a highway, and a "state highway" is statutorily defined as "a right-of-way or location, whether actually used as a highway or not, designated for the construction of a state highway upon it." § 43–1–204, C.R.S.2008 (in effect in 1975). No petition for a right-of-way *"shall ever give the petitioner any right, title, or interest"* in the mineral estate. § 38–1–105(4) (emphasis added).

Third, the Petition in Condemnation requested the "hereinafter described interests in real property for the construction of said highway improvements," and stated the property was fully described in Exhibit A, the legal description of the property. That exhibit thoroughly described the surface estate.

Accordingly, we conclude CDOH/CDOT was not statutorily authorized to condemn mineral interests when it condemned Hunt's land for highway purposes, regardless of the nature of the title it took otherwise. *See McCormick v. Union Pac. Res. Co.,* 14 P.3d 346, 352–53 (Colo.2000) (discussion of fee simple interests that may or may not have mineral rights reserved); *see, e.g.,* W.W. Allen, Annotation, *Condemnor's Acquisition of, or Right to, Minerals Under Land Taken in Eminent Domain,* 36 A.L.R.2d 1424 (1954)(almost invariably, eminent domain statutes have been construed to deny to the condemnor title to minerals underlying the land).

Our interpretation of the plain meaning of section 38–1–105(4) is clarified by SB 08–041, signed April 25, 2008, and effective August 5, 2008, revising several of the condemnation statutes. Ch. 179, sec. 1, 2008 Colo. Sess. Laws 627; *see In re Estate of Hall,* 948 P.2d 539, 544 (Colo.1997) ("[a] legislative amendment may be construed as a clarification rather than a change in the law when the legislative history or the language of a statute clearly indicates an intent to clarify").

When SB 08–041 was introduced, the bill summary read as follows:

Clarifies that the transportation commission, any other governmental entity acquiring land for road or highway purposes, or any other person or entity acquiring an easement or right-of-way may only acquire interests in oil, natural gas, or other mineral resources beneath the land acquired to the extent required for subsurface support. Makes conforming amendments.

The bill's heading reads:

Concerning the ownership of minerals beneath land acquired by governmental entities, and, in connection therewith, clarifying that a governmental entity may acquire interests in such minerals through condemnation only to the extent required for subsurface support.

Section 38–1–105(4) was amended by SB 08–041 to include oil and natural gas among the mineral resources that could not be taken in condemnation of a right-of-way.

Moreover, SB 08–041 added subsection (4) of section 43–1–208:

Notwithstanding any other provision of this section, the commission may not acquire through condemnation any interest in oil, natural gas, or other mineral resources beneath land acquired as authorized by this section except to the extent required for subsurface support.

The amendments to the statutes in SB 08–041 address the very issue before us, and clarify that the legislature does not, and never did, intend for CDOH/CDOT to condemn mineral interests, other than those needed for subsurface support, when it acquires land for highways. Therefore, we conclude the trial court erred in granting summary judgment in favor of CDOT. *See also* Gregory D. Penkowsky, *Mineral Ownership Under Highways, Streets, Alleys and Ditches,* 17 Colo. Law. 43, 44 (Jan.1988) (while section 38–1–105(4) apparently precludes condemnation of minerals other than those needed for subsurface support, CDOH's position in 1988 was that it was entitled to all oil and gas underlying right-of-way in condemnation pro-

ceedings unless specifically reserved by owner, based on the premise that "vein, ledge, lode, or deposit" did not include oil and gas).

CDOT also contends that, because Hunt raised no objection to CDOH's authority to take the mineral estate, and Gypsum Ranch's claims are derivative of Hunt's as her successor in interest, the argument has been waived. However, pursuant to the legislative scheme, CDOH could never take title to the mineral interests underlying the property condemned for highway use. § 38–1–105(4).

Moreover, the Petition requested the interests needed for constructing a highway, and the Rule and Order described only the surface interests pursuant to such a request. *See Sutton v. Frazier*, 183 Kan. 33, 325 P.2d 338, 349 (1958)(although landowners accepted award in condemnation, appraisal of land did not show that mineral interests were taken by improvement district or that landowners had parted with it), *overruled in part on other grounds by City of Shawnee v. Webb*, 236 Kan. 504, 694 P.2d 896 (1985); *see also Feiler v. Wanner*, 340 N.W.2d 168, 171–72 (N.D.1983)(pursuant to statute, state could acquire no mineral rights, which therefore remained with the previous owner of the land). *But see St. Louis & S.F.R. Co. v. Foltz*, 52 F. 627, 632 (C.C.W.D.Ark. 1892)(where owner knew of illegality of condemnation at the time it was made, but still accepted the value of her land, she acquiesced in the validity of the proceedings).

CDOT's reliance on *Radke v. Union Pacific R.R. Co.*, 138 Colo. 189, 209, 334 P.2d 1077, 1088 (1959), for the proposition that ownership of the surface carries with it the ownership of the underlying minerals unless there has been a clear and distinct severance, is misplaced. As noted, section 38–1–105(4) provides that "[n]o right-of-way or easement ... *shall ever give* the petitioner any right, title, or interest to any vein, ledge, lode, [or] deposit ... found or existing in the premises condemned."

■ CDOT also contends the Rule and Order transferring the property effected a conveyance in fee simple absolute, with no reservations and exceptions. However, the Rule and Order, which was recorded as if it were a deed of conveyance, was entered "with respect to the acquisition of the property which is the subject matter of this action," and referred to the property described in Exhibit A. It further stated that "interests of the respondent in said parcel have been acquired by the petitioners, and that the title to said property, together with all appurtenances thereunto belonging, is hereby vested in the petitioner, State Department of Highways." *See Dep't of Transp. v. First Place, LLC,* 148 P.3d 261, 264 (Colo.App.2006)("[i]n construing a deed, a court's primary purpose is to determine the intent of the parties, which must be done by reviewing the deed as a whole, and not isolated sentences or clauses within the deed").

When we review the Rule and Order as a whole, we determine "the acquisition of the property which is the subject matter of this action," condemned for the construction of highway improvements, gave CDOH only an interest in the property sufficient to meet the purpose of the condemnation. *See Bear Creek Dev. Corp. v. Genesee Found.,* 919 P.2d 948, 954 (Colo.App.1996). Acquiring the mineral interest would have transferred an interest beyond the purpose of the condemnation.

■ We also reject CDOT's argument that because CDOH paid the full value of the fee simple absolute, it necessarily took the mineral interest. Because the power to take by eminent domain is qualified, the title may be qualified, even if the condemnor has paid full value for the property. *Id.* at 955; *see Lithgow v. Pearson,* 25 Colo.App. 70, 135 P. 759, 762 (1913) (proper for owner to receive full and actual value of property though fee simple absolute may not have been transferred, because owner forced to accept condemnation).

## IV. Gravel Rights

■ Gypsum Ranch next contends the district court erred in finding the parties intended to transfer the mineral interests to CDOH because Hunt litigated the value of the gravel on the property. We agree because, as a general rule, where the surface of the land contains sand and gravel, a mineral reservation does not include the sand and gravel. *Keith v. Kinney,* 140 P.3d 141, 149

(Colo.App.2005); *Morrison v. Socolofsky*, 43 Colo.App. 212, 214, 600 P.2d 121, 122 (1979). Thus, the dispute over the gravel was irrelevant to show the parties' intent with respect to the mineral interests, and the district court's finding that the parties intended to transfer the mineral interest was erroneous.

### V. The "Useless Remainder" Statute

■ Gypsum Ranch also contends the district court erred in applying the "useless remainder" statute to this case. We agree because the "useless remainder" statute only applies to remaining land that has "little value to its owner or … give[s] rise to claims or litigation concerning severance or other damage," *see* § 43–1–210(1), and that was not the case here.

Moreover, the "useless remainder" statute does not contradict the legislature's clear statement that CDOT is not authorized to acquire through condemnation any mineral interests in land it acquires for highways.

### VI. Summary

We therefore conclude as a matter of law that CDOH/CDOT did not have the authority to take title to the mineral interests by means of condemnation, and that it did not take title to those interests.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM and Judge PLANK * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and