## DEPARTMENT OF TRANSPORTATION, State of Colorado, an agency of the State of Colorado, as successor in interest to the Colorado Department of Highways, Petitioner

v.

GYPSUM RANCH CO., LLC, a Colorado limited liability company; Antero Resources II Corporation, a Delaware corporation doing business in Colorado as Antero Resources Corporation; and Board of County Commissioners of the County of Garfield, State of Colorado, a quasi-municipal corporation, Respondents.

No. 09SC456.

Supreme Court of Colorado,
En Banc.

Nov. 30, 2010.

Rehearing Denied Jan. 10, 2011.*

* Justice Eid would grant the Petition. Justice    Marquez does not participate.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Larry D. Tannenbaum, Senior Assistant Attorney General, Eric T. Meyer, Assistant Attorney General, Denver, CO, for Petitioner.

Balcomb & Green, PC, Edward Mulhall, Jr., Scott Grosscup, Glenwood Springs, CO, for Respondent Gypsum Ranch Co., LLC.

Bjork Lindley Little, PC, David R. Little, Denver, CO, for Respondent Antero Resources II Corporation.

No Appearance for Respondent Board of County Commissioners of the County of Garfield.

Justice COATS delivered the Opinion of the Court.

The department petitioned for review of the court of appeals' judgment in *Gypsum Ranch Co. v. Board of County Commissioners*, 219 P.3d 365 (Colo.App.2009), reversing summary judgment in its favor in an action by Gypsum Ranch to quiet title to the mineral estate in property previously condemned for a highway. The district court had found that in the earlier condemnation proceedings the department acquired a fee simple estate in the disputed parcel of land, to include the subsurface mineral estate. By contrast, the court of appeals concluded that the department could not have acquired the disputed mineral estate because it lacked statutory authority to do so when condemning property for highway purposes.

Because the court of appeals misconstrued the statutory scheme that existed prior to 2008 to prohibit the department from acquiring mineral interests in land condemned for highway purposes, without regard to the nature of the title the department otherwise took, its judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

### I.

In 1975, the predecessor of the Colorado Department of Transportation [1] filed a Petition in Condemnation to acquire certain property interests within a parcel of land in Garfield County, asserting that they were necessary for construction of highway improvements. The authority and necessity for the taking were not disputed in the condemnation proceedings. After the resolution of several evidentiary issues, the parties agreed on an appropriate amount of compensation; and in 1987, the condemnation court issued its Rule and Order, awarding the agreed compensation and granting title to the department. The court's order was recorded in Garfield County.

Gypsum Ranch Co., LLC, subsequently acquired the greater parcel, subject to the

---

1. The Colorado Department of Transportation succeeded the Colorado Department of Highways on July 1, 1991, and all of CDOH's property interests were transferred to CDOT. *See* § 43–1–108, C.R.S. (2010).

property interests condemned by the department. In 2006, Gypsum filed this action seeking to quiet title in the mineral estate beneath the property that had been the subject of the condemnation proceeding, asserting that the department had acquired only rights-of-way or easements across the land, with an interest in the mineral estate extending no further than subsurface support. The department and Antero Resources II Corporation, an oil and gas company that had entered into leases related to the subject property with both Gypsum and the department, were joined in the proceedings. The department answered, contending that while some of the property interests taken were clearly easements, it had acquired a fee simple estate, including the mineral estate, in the disputed parcel.[2] Gypsum and the department both moved for summary judgment, and the district court granted the department's motion. The district court concluded that although Gypsum's predecessor in interest may, at the time of the condemnation proceedings, have had the option to keep the mineral estate, that right was not exercised, and the mineral estate transferred in exchange for compensation. The district court characterized the department's interest acquired in the disputed parcel of land as a fee simple absolute estate, to include the mineral estate.

On direct appeal by Gypsum, the intermediate appellate court reversed, concluding that it was unnecessary to determine the precise nature of the interest acquired by the department in the condemned property because, in the appellate court's view, the applicable statutes plainly barred the acquisition of a mineral estate in condemnation proceedings for highway purposes. Basically, the court of appeals reasoned that the provisions of the statutory scheme governing eminent domain proceedings specified that no right of way acquired by condemnation could include any interest in mineral resources except as required for subsurface support, and the provisions of the statutory scheme governing transportation matters defined a "state highway" as a "right of way." The appellate

court understood legislation enacted in 2008, amending both the eminent domain provisions of title 38 and the transportation provisions of title 43 by expressly limiting the department's authority to acquire a subsurface estate by condemnation, to merely clarify, rather than change, the meaning of existing statutory provisions.

We granted the department's petition for certiorari to address its statutory authority to take title to a mineral estate in condemnation proceedings and settlements.

## II.

■ The power of eminent domain lies dormant in the state until the General Assembly speaks. *Dep't of Transp. v. Stapleton*, 97 P.3d 938, 941 (Colo.2004). The right to condemn private property is therefore a creature of statute and exists to the extent, and only to the extent, permitted by the General Assembly. *See Potashnik v. Pub. Serv. Co.*, 126 Colo. 98, 101, 247 P.2d 137, 138 (1952). *See also generally* 9 *Thompson on Real Property* § 80.07(a)(1) (David A. Thomas ed., 1999); *Bd. of Educ. v. Vic Regnier Builders, Inc.*, 231 Kan. 731, 648 P.2d 1143, 1146 (1982); *Burnett v. Cent. Neb. Pub. Power & Irrigation Dist.*, 147 Neb. 458, 23 N.W.2d 661, 667 (1946).

Articles 1 through 7, of title 38, of the revised statutes govern the power of eminent domain in this jurisdiction. In particular, section 38–1–105(3), C.R.S. (2010), concerning compensation and transfer of title, directs the court to enter, at the conclusion of condemnation proceedings, an order, referred to since its enactment more than a century ago as a "rule," describing the property condemned and the compensation paid therefor. The court's rule or order is then to be recorded and indexed in the office of the county clerk and recorder and given the same effect as if it were a deed of conveyance. *Id.* The immediately following subsection of the statute designates the interest in which the petitioner in condemnation will then become seized. *See* § 38–1–105(4),

---

2. In the Rule and Order, two of the condemned property interests were clearly identified as permanent easements "for the purpose of utility

easement." But the disputed parcel of land was not designated an easement, nor did its description contain any statement of purpose.

C.R.S. (2010). While the statute indicates that a petitioner will generally become seized in whatever interest it has sought, as described in the recorded rule, it includes a disclaimer, which until 2008 specified that "[n]o right-of-way or easement acquired by condemnation shall ever give the petitioner any right, title, or interest to any vein, ledge, lode, or deposit found or existing in the premises condemned, except insofar as the same may be required for subsurface support." § 38–1–105(4), C.R.S. (2007).[3]

Title 43 of the revised statutes is devoted to transportation matters, and as relevant here, the powers and duties of the Department of Transportation and Transportation Commission relative to highways. According to the transportation provisions, the commission is authorized to acquire land for state highway purposes through the power of eminent domain, according to articles 1 to 7 of title 38. § 43–1–208(3), C.R.S. (2010). The department is not limited to condemning for its current needs but is permitted to condemn excess rights-of-way whenever the public interest, safety, or convenience will be served, see § 43–1–210(2), C.R.S. (2010), and even to condemn rights-of-way for anticipated future needs, see § 43–1–210(3), C.R.S. (2010). Whenever the department acquires real property for highway purposes, whether by condemnation, purchase, lease, or any other means, the right to subsurface support is automatically deemed to have been acquired along with it, § 43–1–209, C.R.S. (2010), but until 2008, nothing in title 43 purported to limit the department from taking a greater interest in the subsurface estate.

Also relevant to the scope of the estate or interest subject to acquisition for highway purposes, title 43 deals extensively with the department's powers over the condemned property. For example, property condemned by the department for highway pur-

poses may thereafter be leased until it is needed, § 43–1–210(3), or disposed of altogether if the department determines that it will not be needed for transportation purposes in the foreseeable future, § 43–1–106(8)(n), C.R.S. (2010); § 43–1–210(5), C.R.S. (2010). In addition, if taking part of a parcel for highway purposes would leave the remainder in such shape or condition as to be of little value to its owner or give rise to claims or litigation concerning severance or other damage, the department is authorized to condemn the entire parcel, § 43–1–210(1), C.R.S. (2010). In that event, the statute makes clear that the owner may, but need not, retain the mineral or gravel rights, subject only to the right of subsurface support. *Id.* The department is also expressly authorized to sell, lease, or exchange the excess condemned property. *Id.*

In 2008, the General Assembly enacted legislation amending both titles 38 and 43 in several key respects. S.B. 08–041, 66th Gen. Assembly, 2nd Reg. Sess. (Colo. 2008). In title 43, S.B. 08–041 added language to two different sections, specifically limiting the department's authority to acquire through condemnation any mineral resources beneath land acquired for highway purposes. First, the General Assembly added an additional subsection to section 43–1–208, the provision authorizing the commission to acquire land for highway purposes, barring it from acquiring "any interest in oil, natural gas, or other mineral resources beneath land acquired as authorized by this section except to the extent required for subsurface support." *See* § 43–1–208(4), C.R.S. (2010). Second, in section 209, the provision automatically imputing the right to subsurface support to any acquisition for highway purposes, it added the limiting language, "except that no right to oil, natural gas, or other mineral resources be-

---

**3.** In its entirety, subsection 38–1–205(4), C.R.S. (2007), stated:

Upon the entry of such rule, the petitioner shall become seized in fee unless a lesser interest has been sought, except as provided in this section, of all such lands, real estate, claims, or other property described in said rule as required to be taken, and may take possession and hold and use the same for the purposes specified in such petition, and shall thereupon be discharged from all claims for any damages by reason of any matter specified in such petition, certificate, or rule of said court. No right-of-way or easement acquired by condemnation shall ever give the petitioner any right, title, or interest to any vein, ledge, lode, or deposit found or existing in the premises condemned, except insofar as the same may be required for subsurface support.

neath such real property shall be acquired by a governmental entity through condemnation unless the acquiring authority determines that such acquisition is required for subsurface support." *See* § 43–1–209, C.R.S. (2010).

In title 38, the General Assembly expanded section 38–1–105, previously specifying that except for subsurface support no right-of-way or easement acquired by condemnation could give the petitioner an interest in "any vein, ledge, lode, or deposit" in the condemned premises, to include in its list of prohibited interests any "oil, natural gas, or other mineral resource." *See* § 38–1–105(4), C.R.S. (2010).

### III.

██ With the enactment of S.B. 08–041, there can be little doubt that governmental entities are prohibited from acquiring a right to any mineral resource beneath real property that was itself acquired through condemnation for highway purposes, except to the extent required for subsurface support. In the absence of any clear indication to the contrary, however, statutory enactments are presumed to be intended to change the law and to do so only prospectively. *Union Pac. R.R. Co. v. Martin*, 209 P.3d 185, 188 (Colo. 2009). Although the court of appeals found in the bill's summary, and what it referred to as the bill's heading,[4] an intention to merely clarify an existing limitation on the condemnation power of governmental entities, nothing in the body of the enactment itself suggests such an intention.

██ While a title is constitutionally required, solely for the purpose of giving notice of an Act's subject, *see* Colo. Const., art. V, § 21, and a bill's summary may or may not have been relied on in some measure by legislators in considering the bill, neither a bill summary nor its title is enacted into law or appears in the revised statutes. Depending upon the specificity of its usage, the word "clarify" appearing in a declaration of legislative intent may, in and of itself, be inade-

quate to evidence an intent to reach cases arising before an enactment. *See, e.g., City of Colo. Springs v. Powell*, 156 P.3d 461, 465–66 (Colo.2007). In any event, however, even a clear indication of intent to clarify rather than change existing law could not dispositively establish the meaning of previously enacted legislation. *Martin*, 209 P.3d at 188; *see also O'Gilvie v. United States*, 519 U.S. 79, 90, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996) ("[T]he view of a later Congress cannot control the interpretation of an earlier enacted statute."); *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.").

██ A court's objective in interpreting statutes must be to determine legislative intent, as expressed in the language the enacting body has chosen to use in the statute itself. *People v. Owens*, 228 P.3d 969, 972 (Colo.2010). If the language in which a statute is written is susceptible of more than one reasonable interpretation, and is therefore ambiguous, a body of accepted intrinsic and extrinsic aids to construction may be applied to determine the particular reasonable interpretation embodying the legislative intent. *Holcomb v. Jan–Pro Cleaning Sys.*, 172 P.3d 888, 890 (Colo.2007). Where a term could have a number of different meanings in the abstract, its intended meaning in a specific instance will often be apparent from the context, or statutory scheme, in which it appears. *Curious Theatre Co. v. Colo. Dep't of Pub. Health & Env't*, 220 P.3d 544, 549 (Colo. 2009); *Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 448 (Colo.2005); *see also Walgreen Co. v. Charnes*, 819 P.2d 1039, 1043 & n. 6 (Colo.1991) (applying the rule that statutes relating to the same subject matter be construed in pari materia, gathering the legislative intent from the whole of the enactments).

Because section 38–1–105(4) could reasonably be understood, even before the 2008

---

4. Generally, the term "heading" or "head note" is used to refer to the introductory designation of a title, article, or section of the revised statutes. From the language quoted by the court of ap-

peals, it clearly refers to the Act's title, which appears in the session laws but not in the revised statutes.

amendments, to bar the acquisition of a mineral estate not required for subsurface support when condemning a right-of-way, and section 43–1–204 partially defines a "state highway" in terms of a right-of-way, the extent of the department's authority with regard to mineral interests prior to 2008 turns largely on the legislature's use of the term "right-of-way" in each context. Unless the term can have but one meaning or it can be determined that, despite having more than one meaning, the legislature intended the term to have the same meaning in both statutory schemes, it does not follow that the department lacked the statutory authority to acquire a mineral estate when condemning for highway purposes.

On cursory inspection, it is apparent that the General Assembly has used the term "right-of-way" in a number of different ways. Most commonly, it is used to indicate precedence in traffic rather than as a reference to property interests at all. *See, e.g.,* § 24–10–106(1)(d)(II), C.R.S. (2010) (waiving governmental immunity for dangerous conditions caused by the failure to realign a stop sign or yield sign that was turned "in a manner which reassigned the right-of-way upon intersecting public highways, roads, or streets"). *See generally Black's Law Dictionary* 1440 (9th ed. 2009). Even when the term is used in reference to property interests, however, its various nuances of meaning have long been recognized. *See Hutson v. Agric. Ditch & Reservoir Co.,* 723 P.2d 736, 739 (Colo.1986) (discussing *McCotter v. Barnes,* 247 N.C. 480, 101 S.E.2d 330, 334 (1958)); *see also Bouche v. Wagner,* 206 Or. 621, 293 P.2d 203, 209 (1956) (citing *Terr. of New Mexico. v. United States Trust Co. of New York,* 172 U.S. 171, 183, 19 S.Ct. 128, 43 L.Ed. 407 (1898)).

In the context of real property generally, the term "right-of-way" is perhaps most commonly used to describe a limited property right. *See Terr. of N.M.,* 172 U.S. at 182, 19 S.Ct. 128 ("It is sometimes used to describe a right belonging to a party, a right of passage over any tract" (quoting *Joy v. City of St. Louis,* 138 U.S. 1, 44, 11 S.Ct. 243, 34 L.Ed. 843 (1891))). *See generally Black's Law Dictionary* 1440 (9th ed. 2009). This limited

property right may be a type of easement, *see Hutson,* 723 P.2d at 739 ("In the absence of additional descriptive language, 'right-of-way,' when used to describe an ownership interest in real property, is traditionally construed to be an easement."), but at times it has also been characterized as a limited fee interest, *see e.g., United States v. Union Pac. R.R. Co.,* 353 U.S. 112, 118, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957) (discussing "a line of decisions by the United States Supreme Court describing the rights-of-way under early railroad land grants as limited fees").

Especially in the context of railroads and highways, however, the term is also commonly used more broadly in reference to the strip of land on which the highway or railroad tracks will be constructed. *See Terr. of N.M.,* 172 U.S. at 182, 19 S.Ct. 128 (" '[I]t is also used to describe that strip of land which railroad companies take upon which to construct their roadbed.' That is, the land itself, not a right of passage over it." (quoting *Joy,* 138 U.S. at 44, 11 S.Ct. 243)). *See generally Black's Law Dictionary* 1440 (9th ed. 2009) ("The right to build and operate a railway line or a highway on land belonging to another, *or the land so used* .... The strip of land subject to a nonowner's right to pass through." (emphasis added)). In this sense, the term is merely descriptive of the purpose to which the land is being put, without reference to the quality of the estate or interest the railroad company or highway authority may have in the land. *See Hutson,* 723 P.2d at 739; *McCotter,* 101 S.E.2d at 334–35 ("It is a matter of common knowledge that the strip of land over which railroad tracks run is often referred to as the 'right of way' ....").

It is clear from the context that the term "right-of-way" is used in section 38–1–105(4) to describe a limited property interest in the nature of an easement. The provision in which the term appears describes the nature of the property right in which a condemnor becomes seized upon the recording of a "rule," and the caveat limiting the subsurface estate included when the property right acquired by condemnation is a right-of-way actually uses the term synonymously with, or in substitution for, an "easement," a term clearly referring to a specific property right.

*See id.* ("No right-of-way or easement acquired by condemnation ...). Even assuming that prior to the 2008 addition of the language "oil, natural gas, or other mineral resource," the subsurface estate limited by this provision contemplated the entire subsurface estate but for required support, the caveat therefore applied, and continues to apply, only to the condemnation of such an easement.

By contrast, the applicable provisions of title 43 are not primarily concerned with specific property interests but with the construction of a highway system. The definition of "state highway" relied on so heavily by the appellate court uses the term "right-of-way" synonymously with, or as a substitute for, "location" rather than "easement," and both "right-of-way" and "location" are further modified by the phrase, "designated for the construction of a state highway *upon it.*" § 43–1–204 (emphasis added). Especially in light of the description of the powers and duties of the department and commission appearing throughout title 43, this definition points to a usage referring not simply to a specific and limited property interest but to the actual land upon which a highway is to be constructed.

Prior to 2008, section 43–1–208 granted the Transportation Commission the power to condemn "land" for state highway purposes, without expressly placing any limitation on taking the subsurface estate. "Land" is a statutorily defined term that "includes lands, tenements, and hereditaments, and all rights thereto and all interests therein." § 2–4–401(5), C.R.S. (2010). *Compare Radetsky v. Jorgensen,* 70 Colo. 423, 428, 202 P. 175, 176 (1921) (deed purporting to convey a strip of "land" conveyed a fee simple estate), *with N. Sterling Irrigation Dist. v. Knifton,* 137 Colo. 40, 44, 320 P.2d 968, 970 (1958) (deed purporting to convey a strip of "ground" rather than "land" conveyed only an easement).

Furthermore, the department is expressly granted the authority to condemn land not merely for "state highways" but for "state highway purposes." *See* § 43–1–210. Throughout the statutory scheme it is granted the authority to acquire and hold "strips or parcels of land" for purposes related to but distinct from a right of passage by highways themselves, such as "the restoration, preservation, and enhancement of scenic beauty" and "the development of rest, recreation, and sanitary areas." *E.g., id.* Similarly, it is granted the authority to rent or sell such lands. *Id.*

Even prior to 2008, title 38 therefore clearly restricted the subsurface estate that was acquired by the condemnation of an easement. Title 43, however, just as clearly authorized the department to condemn land for highway purposes, without limiting it to the acquisition of a particular interest in that land. In context, its use of the term "right-of-way," as was common with regard to highways and railroads, referred broadly not only to a right of passage over property but also to the property itself. The use of the same term in both titles 38 and 43 therefore does not imply any limitation on the statutory authority of the department to condemn more than easements or to acquire mineral estates in condemnation for highway purposes.

## IV.

Because the court of appeals misconstrued the statutory scheme that existed prior to 2008 to prohibit the department from acquiring mineral interests in land condemned for highway purposes, without regard to the nature of the title the department otherwise took, its judgment is reversed. Because, however, we are unable to determine the extent to which other arguments of the parties may have been left unaddressed or were rejected solely in reliance on this erroneous statutory construction, the case is remanded for further proceedings consistent with this opinion.

JUSTICE EID dissents.

JUSTICE EID, dissenting.

Today the majority holds that when the Department of Transportation condemned property for a state highway prior to 2008, it also received title to the subsurface mineral estate lying beneath the land necessary to build the highway. Yet section 38–1–105(4)

provided at the time that "[n]o right-of-way or easement acquired by condemnation shall ever give the [condemnor] any right, title, or interest to any vein, lodge, lode, or deposit found or existing in the premises condemned, except insofar as the same may be required for subsurface support." I would hold that this limitation on the condemnation of a right-of-way generally applied to the Department's condemnation for state highway purposes, and that therefore the Department had no authority to condemn any mineral estate in this case, "except insofar as the same may be required for subsurface support." Accordingly, I respectfully dissent from the majority's opinion.

The majority concedes that "section 38–1–105(4) could reasonably be understood, even before the 2008 amendments, to bar the acquisition of a mineral estate not required for subsurface support when condemning a right-of-way." Maj. op. at 131–32. The question, then, is whether that limitation applied to condemnations of rights-of-way by the Department for the purpose of building highways under section 43–1–208 prior to the 2008 amendment making the limitation express. I would hold that the Department's authority was always so limited, and that the 2008 express limitation was merely a clarification in the law.

Section 43–1–208 limits the Department's condemnation authority to condemning land interests to build a "state highway," which is defined as "a right-of-way or location ... designated for the construction of a state highway upon it." § 43–1–204, C.R.S. (2010). By using the term "right-of-way" in section 43–1–204, the legislature subjected the Department's condemnations under section 43–1–208 to the limitations set forth in section 38–1–105(4), which provided that mineral rights would be condemned only to the extent necessary for subsurface support. And while the majority spends a good amount of time traversing the various meanings of the term "right-of-way," maj. op. at 132–33, however that term is defined, it is subject to the limitations on subsurface mineral condemnations set forth in section 38–1–105(4). In sum, read together, sections 38–1–105(4) and 43–1–204 and –208 confine the Department's condemnation authority regarding mineral rights to only those rights necessary for subsurface support.

Section 43–1–208(1) more broadly supports this reading by describing "the purpose" for which the Department may condemn land—namely, "to establish, open, relocate, widen, add mass transit to, or otherwise alter a portion of *a state highway*." (Emphasis added.) The only condemnation of mineral rights that would further this express "purpose" is the condemnation of mineral rights to the extent necessary to support the building of the highway—that is, the same limitation described in section 38–1–105(4). Section 43–1–204 further reinforces the limited purpose for which land may be condemned by identifying the condemned land as that "designated for the construction of a state highway *upon it*." (Emphasis added.) Again, the purpose for which land is to be condemned is to support the building of a highway, not to pursue mineral rights unnecessary to the building of the highway.

In 2008, the legislature passed S.B. 08–041, which expressly limited the Department's condemnation authority over mineral rights to only those rights necessary for subsurface support. *See* § 43–1–209, C.R.S. (2010). In my view, S.B. 08–041 merely made express the limitation on the Department's authority that was already imposed by sections 38–1–105(4) and 43–1–204 and –208. *See* Ch. 179, § 1, 2008 Colo. Sess. Laws 627 (entitling S.B. 08–041 as a bill "Concerning the ownership of minerals beneath land acquired by governmental entities, and, in connection therewith, *clarifying* that a governmental entity may acquire interests in such minerals through condemnation only to the extent required for subsurface support")(emphasis added). Because the Department's authority to condemn mineral rights was, and is, limited to only those rights necessary for subsurface support, I respectfully dissent from the majority's opinion.